## THOMPSON v. MAXWELL.

1. None but parties and privies can have a bill of review; and it will not lie where the decree in question was passed by consent.
2. A decree for carrying out a settlement and compromise of a suit, if obtained without fraud, cannot be impeached.
3. *Buffington* v. *Harvey, supra,* p. 99, cited and approved.
4. As the bill in this case, before it was by amendment converted into a bill of review, approximated to the character of a bill to carry the original decree more effectually into execution, which was the appropriate remedy of the complainants, the court, while reversing the decree, does not direct that the bill be absolutely dismissed, but that the complainants be allowed to amend it, with leave to defendants to answer any new matter therein introduced, and that the proofs taken in the cause shall stand as proofs at any future hearing thereof, with liberty to either party to take additional proof upon any new matter that may be put in issue by the amended pleadings.

APPEAL from the Supreme Court of the Territory of New Mexico.

The facts are stated in the opinion of the court.

*Mr. Matt. H. Carpenter* and *Mr. Joseph B. Stewart* for the appellants.

*Mr. W. W. MacFarland, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

In 1859, Alfred Bent and his two sisters, Estefana and Teresina, with their husbands, filed a bill in chancery in the District Court of the Territory of New Mexico for the County of Taos, against Charles Beaubien, Guadalupe Miranda, Lucien B. Maxwell, and José Pley, claiming and alleging that Charles Bent, deceased, the father of Alfred and his sisters, at the time of his death, was jointly interested with said Beaubien and Miranda, to the extent of one-third part, in a certain specified tract of land in said territory, amounting to two millions of acres, which had been granted to said Beaubien and Miranda by the New Mexican government in 1841, and stood in their names; and that as to said third part they were trustees for said Charles up to the time of his death, and from thenceforward trustees for the said Alfred and his sisters as heirs-at-law of said Charles. The bill further stated that Maxwell and Pley pretended to have become interested in said land; and

prayed as against all the defendants that the title of said Charles Bent to the third part thereof might be established, and for a partition. Such proceedings were had in that suit, that, on the 29th of May, 1865, a decree was made, establishing Bent's title to one undivided fourth part of the land, the right of succession of the complainants, and adjudging that a partition be made according to the prayer of the bill. Commissioners for making partition were appointed by the decree, and ordered to report at the next term, the court reserving its decree as to the partition and the costs of the cause.

After this decree was made, certain negotiations took place between Maxwell (who had acquired the principal interest in the property) and the complainants, looking to a settlement of the controversy, and a purchase by Maxwell of the complainants' interest. Whether these negotiations were concluded in Alfred Bent's lifetime, or not until after his death, subsequently became a matter of controversy between the parties. He was accidentally killed on the 15th of December, 1865, leaving a widow, Guadalupe Bent (who afterwards married George W. Thompson), and three infant children, Charles, Julian, and Alberto, his heirs-at-law.

The commissioners for making partition never reported; and the next proceeding in the cause, so far as appears by the record, was an order made in April, 1866, making the infant children and heirs of Alfred parties complainant, and continuing the cause. A few days afterwards, in the same term, the following order was entered in the cause: —

"By agreement of the parties, the continuance of this cause, made on a former day of this term of this court, is set aside; and, on motion of solicitors for the complainants, Guadalupe Bent is hereby appointed guardian *ad litem* and commissioner in chancery for the minors of Alfred Bent in this cause, with full power to execute deeds or carry into execution all sales or transfers made of her [their?] interests in and to the real estate therein described to Lucien B. Maxwell, one of the defendants in said cause, and that this cause stand continued until the next term of this court."

On the third day of May, 1866, Guadalupe Bent, as guardian *ad litem* of Charles, Julian, and Alberto, and commissioner under the foregoing order, executed a deed of conveyance in

fee to the said Maxwell for the one undivided twelfth part of the property in question, belonging to the said Charles, Julian, and Alberto, as heirs of their father. The sisters of Alfred, with their husbands, executed deeds for their interest in the lands about the same time.

In September Term, 1866, another decree (probably intended as a substitute for the order made in April) was made in the said cause, in the words following, to wit:—

" Whereas an interlocutory decree was rendered at a former term of this court in the above cause, decreeing one-fourth of the land mentioned in the petition herein to the complainants in this cause, and appointing commissioners to divide and set apart the portion so decreed; and whereas said interlocutory decree was never carried into effect; and whereas, since the time of the rendition of said decree, a mutual agreement has been made between the parties to this cause, settling and determining all the equities in the same:

" It is, therefore, hereby ordered, adjudged, and decreed, by the mutual consent and agreement of the said complainants as well as of the said defendants in this cause, that the interlocutory decree above mentioned, together with all orders made under and by virtue of the same, be set aside; and, by the mutual consent and agreement of the said parties, it is hereby further ordered, adjudged, and decreed that the said Lucien B. Maxwell, one of the defendants in this cause, pay to the said complainants the sum of $18,000, to be divided among them *per stirpes;* that is, to the said Aloys Scheurick and Teresina Bent, his wife, one-third part, and to Alexander Hicklin and Estefana Bent, his wife, another third part, and to Charles Bent, Julian Bent, and Alberto Silas Bent, the children and heirs of Alfred Bent, deceased, the remaining third part, to be equally divided among the said last named, and to be paid into the hands of Guadalupe Bent, widow of the [said] Alfred Bent, deceased, and guardian *ad litem* for said children, for the purposes of the said division.

" And, upon the further consent and agreement of the said parties, it is hereby further ordered, adjudged, and decreed that the said Alexander Hicklin and Estefana Bent, his wife, the said Aloys Scheurick and Teresina Bent, his wife, and the said Guadalupe Bent, guardian *ad litem* for Charles Bent, Julian Bent, and Alberto Silas Bent, children and minor heirs of the said Alfred Bent, deceased, within ten days from the date of this decree, make, execute, and deliver to the said Lucien B. Maxwell good and sufficient

deeds of conveyance of all their right, title, interest, estate, claim, and demand of, in, and to the lands in controversy in this cause, the said Guadalupe Bent, guardian *ad litem* as aforesaid, in the name of Charles Bent, Julian Bent, and Alberto Silas Bent, minor heirs as aforesaid, and the said Alexander Hicklin and Estefana Bent, his wife, and the said Aloys Scheurick and Teresina Bent, his wife, in their own names. And, by further consent and agreement between the said parties, it is hereby further ordered, adjudged, and decreed that the costs of this suit shall be paid, each of the said parties to pay the separate costs in the same made by themselves."

This last decree seems to have been the termination of proceedings in the cause. No further conveyances were executed, and nothing else was done to carry the decree into effect.

On the first day of August, 1870, nearly four years after the entry of the last decree, the proceedings were instituted which are now brought here on this appeal. On that day, the present appellees, The Maxwell Land-Grant and Railway Company (to whom by mesne conveyances a large portion of the land had, in the mean time, been assigned), together with Lucien B. Maxwell and his wife, filed in the same court a bill against Guadalupe Thompson, administratrix of Alfred Bent's estate, her husband, George Thompson, and the said infant children and heirs of Alfred Bent, in which bill, after setting forth the grant to Beaubien and Miranda, and the derivative title of the complainants in the land, and the substance of the proceedings which had taken place in the previous suit, the complainants proceeded to state at large the terms of the compromise agreement which had been made, and which had resulted in the final decree made in that suit. They alleged that this compromise was agreed upon in the lifetime of Alfred Bent, though not carried out until after his death, and that its terms were that Lucien B. Maxwell should pay to the complainants in the original suit $18,000, or $6,000 apiece ; and that, in consideration thereof, Alfred Bent and his two sisters should release and discharge the premises and every part thereof; and the said Maxwell and wife, from the said trust or equitable claim, and, in confirmation thereof, should convey to Maxwell all their right, title, and interest in and to the premises. The bill further alleged that the said $18,000 was duly paid (the sum

of $6,000 due to Alfred being paid to his wife as administratrix of her husband's estate, and not as guardian of his children); and that the sisters of Alfred, with their husbands, executed conveyances in accordance with the compromise agreement, in May, 1866, and that Guadalupe Bent, by a deed of conveyance executed by her as guardian aforesaid, undertook to convey the interest of the children as before stated; and that by said compromise and conveyances the said trust became extinguished, and the title of Maxwell became freed and discharged therefrom. The bill then set forth certain errors, which it was alleged had been committed in the original proceedings, and which cast a cloud upon the title of the complainants, namely: *First*, that it did not appear therein (as the fact was) that an agreement for the sale of the equitable interest of Alfred Bent was made by him, in his lifetime, with said Maxwell; *secondly*, that the interlocutory decree (of May, 1865) should not have been set aside, but should have been modified; *thirdly*, that the money paid by Maxwell for the interest of Alfred Bent should have been directed to be paid to his personal representative, and not to the guardian *ad litem* of his children; and, *fourthly*, that, upon such payment being made, the court should have decreed and adjudged the said trust and equitable claim or interest to be extinguished, and that the premises should be held free and discharged of said trust. The bill then prayed for a decree that the trust be terminated and extinguished; that the defendants have no interest or title in the premises, equitable or otherwise; that the plaintiffs hold them free and discharged of all trusts in favor of the defendants and all claiming under them; and for other and further relief. This bill being demurred to, the complainants were allowed to amend it by adding a prayer in the following words: "That for the aforesaid errors of law, apparent on the face of the said decree of 10th September, 1866, the same may be reviewed and reversed in the points herein complained of."

It is manifest that the object of this bill, especially after being amended, was to set aside the decree made in the original cause, and to substitute therefor a new decree supposed to be more advantageous to the complainants, upon the same matters

which were before the court and under its consideration in the said cause. Under the guise of a bill for quieting title it was in reality a bill of review.

The defendants, after the appointment of a guardian *ad litem* for the infants, answered the bill. Guadalupe Thompson and her husband denied that an agreement for a compromise was ever made by Alfred Bent in his lifetime; but they substantially admitted the other facts stated in the bill; alleging, however, that Guadalupe, although she executed the deed of May, 1866, in good faith, was wholly ignorant of the rights of her children. The guardian *ad litem* for the infants simply referred their rights to the court.

Upon these pleadings the parties took proofs; and, without going into the details thereof, it is sufficient to say, that, in our judgment, the complainants entirely failed to substantiate the main fact relied upon by them, namely; that the agreement for a compromise was concluded with Alfred Bent in his lifetime. The effect of the evidence appears to be, that, although negotiations were commenced before his death, no agreement was concluded until after that event, when it was concluded by his brother-in-law, Scheurick, and was acquiesced in by the other parties, including the widow of Alfred, acting in behalf of her children.

Upon the case as thus made, the court, in September Term, 1873, made a decree to the following effect; namely, —

*First*, That the decree of Sept. 10, 1866, was erroneous, and should be reversed, in so far as it set aside the provisions of the interlocutory decree of May 29, 1865; determining Charles Bent's interest in the land, and the right of his children to succeed thereto, and directing Guadalupe Bent, the widow of Alfred, as guardian *ad litem* for his minor children, to make a deed of conveyance of all their right, title, and interest in the said land.

*Secondly*, The court found and declared, that, after the death of Alfred Bent, and pending the original suit, an agreement by way of compromise was made by the adult parties thereto, for settlement of the same, and that the terms thereof were considered advantageous to the infants, and were accepted by the court on their behalf, as evinced by the decree attempting

to carry it out; also, that Maxwell had paid the money stipulated for in the compromise, and that the infants' share had been received by their mother for their benefit, whereby their right to the land became extinguished, and the land became discharged from the trust: therefore, it was decreed that the Maxwell Land-Grant and Railway Company held the land free and discharged of said trust.

The defendants appealed from this decree to the Supreme Court of the Territory, where it was affirmed; and from thence it was appealed to this court, and the question before us is as to the validity of these proceedings in the last suit.

If the bill is to be regarded as a bill of review (and in its ultimate aspect, at least, it seems impossible to regard it otherwise), the proceedings are clearly objectionable, on the following grounds: —

*First*, The decree sought to be set aside and reversed was a consent decree. It is a general rule that against such a decree a bill of review will not lie. *Webb* v. *Webb*, 3 Swanst. 658; 2 Smith Ch. Pr. 50; 2 Dan. Ch. Pr. 1629 (3d Am. ed.).

*Secondly*, The bill is filed by and on behalf of an assignee of the original defendant, namely, The Maxwell Land-Grant and Railway Company; whilst another rule, relating to bills of review is, that none but parties and privies can have a bill of review. It does not lie for assignees. Gilbert. For. Rom. 186, 2 Smith Ch. Pr. 49; 2 Dan. Ch. Pr. 1627. The fact that Lucien B. Maxwell and his wife are joined as complainants does not obviate the difficulty.

*Thirdly*, The bill seeks a reversal and modification of the decree upon an alleged matter of fact not appearing upon the record; namely, that the compromise agreement was made with Alfred Bent in his lifetime, without alleging any newly discovered evidence unknown to the parties before the decree. We decided, in the case of *Buffington* v. *Harvey, supra*, p. 99 (what was well settled before), that the only questions open in a bill of review (except when filed on the ground of newly discovered evidence) are such as arise upon the face of the record, without reference to the evidence in the cause. *Whiting* v. *Bank of the United States*, 13 Pet. 6; *Putnam* v. *Day*, 22 Wall. 60.

The case, it is true, is somewhat anomalous. The decree sought to be set aside by the bill of review was not made in pursuance of the relief sought by the bill in the original cause, and was not based upon the pleadings and evidence therein. It was a decree for confirming and carrying out a settlement of the controversy, which had produced a change of interest. The original suit was instituted by the heirs of Charles Bent, to establish an equitable interest in an undivided share of the lands, and for a partition thereof. A decree was made establishing the right, ordering the partition, and appointing commissioners to make it. This was as far as the suit progressed. It was then settled, and the decree in question was entered by consent, setting aside the decree for partition, and carrying out the settlement. The bill of review alleges the fact to have been that the settlement was made by Alfred Bent in his lifetime, and that the decree ought not to have set aside the former decree establishing his rights, and ought not to have directed the guardian of his infant heirs to execute a conveyance; but ought to have declared the land discharged from the trust, upon payment by Maxwell of the agreed consideration to Alfred's personal representatives. In other words, the bill of review insists that the decree was misconceived and erroneous, in view of the state of facts out of which it grew, and which did not appear in the record of the cause.

We do not think that the peculiarity of the case, however, takes it out of the ordinary rules that apply to a bill of review. A decree for carrying out a settlement and compromise of a suit is certainly not, of itself, erroneous. When made by consent, it is presumed to be made in view of the existing facts, and that these were in the knowledge of the parties. In the absence of fraud in obtaining it, such a decree cannot be impeached.

We have looked into the laws of New Mexico, to see whether there is any thing peculiar in the modes of proceeding there which would sustain the bill in its present form; but we have failed to find any thing of the kind. In civil cases, those laws adopt the civil-law mode of practice, subject to the regulation of the Supreme Court of the Territory. Compiled Laws, pp. 195, 196. That court has made separate regulations for

common-law and equity practice. The rules in relation to the latter are not materially different from those adopted by this court for equity cases in the circuit courts. The civil procedure as pursued in the Spanish courts has no proceeding analogous to a bill of review, except the allegation of nullity, which must be made within sixty days from the time of pronouncing the decree; after which period, if no appeal be taken, the sentence or decree becomes *res adjudicata*, and cannot be revoked unless obtained by means of false or forged proofs. 1 White's Recopilacion, 305, 306, from Aso & Manuel's Institutes, lib. 3, tit. 8, c. 1; Escriche's Diccion, tit. Sentencia Nula.

Tested, therefore, by any law of procedure which may be invoked in its support, the bill in this case, considered as a bill of review, seeking to reverse, modify, and reconstruct the decree of September, 1866, cannot be sustained. Nevertheless, the general purpose which it evidently had in view — the quieting of the title to the land in question — is one towards which a court of equity is always liberally disposed, as tending to promote the peace of society and the security of property. And if, instead of seeking to reverse the decree of September, 1866 (which, for like reasons of public policy, as applicable to the security of judgments that have passed into *rem adjudicatam*, is not allowable), the bill had sought to carry that decree more effectually into execution, it would have been free from legal objections, and equally conducive to the object in view. Bills for the purpose named are well known in equity proceedings. Lord Redesdale says : —

" Sometimes, from the neglect of parties, or some other cause, it becomes impossible to carry a decree into execution without the further decree of the court. This happens, generally, in cases where parties having neglected to proceed upon the decree, their rights under it become so embarrassed by a variety of subsequent events that it is necessary to have the decree of the court to settle and ascertain them. Sometimes such a bill is exhibited by a person who was not a party to the original decree, but claims a similar interest, or is unable to obtain the determination of his own right till the decree is carried into execution. Or it may be brought by or against a person claiming as assignee of a party to the decree. The court

in these cases in general only enforces, and does not vary, the decree; but on circumstances it has sometimes considered the directions, and varied them in case of mistake; and it has even on circumstances refused to enforce the decree; though in other cases the court, and the House of Lords upon an appeal, seem to have considered that the law of the decree ought not to be examined on a bill to carry it into execution." Redesdale's Treatise, 95, 96.

It seems to us that the remedy here described by such high authority is applicable to the case at bar. The decree of September, 1866, has never been carried into effect by any act done since it was made. It directed that Maxwell should pay the money stipulated for by the compromise, and that the defendant should execute deeds of conveyance. But the parties seem to have assumed that their previous acts performed in May, 1866, were a sufficient compliance with the directions of the decree. Yet the decree does not take notice of this fact.

Now, in order to execute this decree, or to determine whether it has or has not been substantially executed, and to determine and declare the effect of such execution upon the rights of all concerned, and thus remove any cloud from the title arising from the imperfection of the proceedings, it was perfectly competent for the parties to file a bill conceived and constructed to that end. The bill in this case, as originally filed, before it was converted by amendment into a bill of review, and abating the allegations of error in the original decree, approximated to the character of such a bill as might have been sustained. The proofs show a case which, in our judgment, supports the conclusions of the decree, to the effect that the terms of compromise made by the adult parties to the suit (including the mother and guardian of the infant heirs of Alfred Bent) were advantageous to the said infants, and were so considered and accepted by the court in their behalf. But, so far as the present decree undertook to reverse and modify the decree of September, 1866, we think it is clearly erroneous   Still, although we feel obliged to reverse the present decree, we do not think that the bill should be absolutely dismissed. And, as the whole question between the parties has been fully litigated on the proofs, it would be unreasonable to require that these should be taken over again.

Our conclusion is, that the present decree must be reversed with costs, and that the cause be remanded to the court below, with directions to allow the complainants to amend their bill as they shall be advised, and with liberty to the defendants to answer any new matter introduced therein; and that all the proofs in the cause shall stand as proofs upon any future hearing thereof, with liberty to either party to take additional proofs upon any new matter that may be put in issue by the amended pleadings; and it is                                *So ordered.*