THOMPSON, Adm'x, etc., and others *v.* MAXWELL LAND GRANT & RY. Co. and others.

Filed March 14, 1885.

1. EQUITY PLEADING—AMENDMENTS.

Upon the amendment of a bill, the defendant is entitled to file an amended answer making, if he wishes, an entirely new defense; and this right is not affected by an order of the supreme court reversing a former decree in the case, with leave to plaintiffs to amend their bill, and allowing defendants to answer any new matter introduced therein.

2. SAME—INFANT DEFENDANT.

An infant defendant, having become of age, is entitled to his day in court, and may file his separate answer, making, if he choose, an entirely new defense.

3. EQUITY PRACTICE—BILL TO ENFORCE DECREE.

On bill to enforce a decree, defendants must be permitted to attack it, and the court will look into the case for the purpose of seeing whether it was equitable and just.

Error to the district court for Colfax county.

*Caldwell, Yeamans, Wells, Smith & Macon,* for plaintiffs in error.

*Catron, Thornton & Clancy* and *Frank Springer,* for defendants in error.

BELL, J.   The facts in this case are substantially as follows:

On the first day of August, 1870, the Maxwell Land Grant & Railway Company, Lucien B. Maxwell, and Luz B. Maxwell, his wife, filed in the district court of Colfax county their bill in equity against Guadalupe Thompson and George W. Thompson, her husband, and Charles Bent, Juliano Bent, and Alberto Silas Bent, three infant children of the said Guadalupe Thompson, by Alfred Bent, her former husband.

An amended bill was filed on the eleventh day of January, 1873.   This amended bill states that in 1841 the republic of Mexico granted certain lands to Charles Beaubien and Guadalupe Miranda,—the same now commonly known as the Maxwell land grant; that in 1860 the grant was confirmed by act of congress; that afterwards Maxwell and his wife became the sole owners of the said premises, and, in 1870, conveyed them to the Maxwell Land Grant & Railway Company.   With certain exceptions, the bill then sets forth that in September, 1859, Alfred Bent, since deceased, Estefana Hicklin, and Alexander Hicklin, her husband, Teresina Bent, and Aloys Scheurick, her husband, instituted their bill in the district court for Taos county against the said Maxwell and wife, and sundry other persons, claiming an undivided one-fourth part of this grant, as heirs at law of Charles Bent, their father and ancestor; alleging, in substance, that, by parol agreement between the original grantees and the said Charles Bent, the said Charles Bent was equitably entitled to such undivided interest; and praying that the defendants in that bill might be declared to hold the premises, in respect to the undivided one-fourth, in trust for the said complainants.

The bill further sets forth that at the May term, 1865, of the Taos district court a decree was entered, which in this bill is termed interlocutory in substance, establishing the rights of the plaintiffs, and declaring that in the lifetime of the said Charles Bent, Beaubien and Miranda held the legal title and estate in and to one undivided one-fourth part of the grant in trust for Charles

Bent; that, upon the decease of the said Charles Bent, the complainants in this suit succeeded to this equitable interest; and decreeing partition; that commissioners were appointed, etc.

The bill further sets forth that afterwards, and in the life-time of the said Alfred Bent, the plaintiffs in the said suit being all *sui juris*, before any steps had been taken to execute the decree, entered into an agreement of compromise with Maxwell, whereby, in consideration of $18,000 to be paid them by Maxwell, they agreed to release Maxwell and wife of the said trust in equity; that afterwards, and about the fifteenth of December, 1865, Alfred Bent died, leaving as his sole heirs at law three minor children, to-wit: Charles Bent, Juliano Bent, and Alberto Silas Bent; that at the April term of the Taos district court, in 1866, the death of the said Alfred Bent was suggested, and the said three minors were made parties plaintiff, and their mother, Guadalupe Bent, was appointed their guardian *ad litem;* and it was afterwards made to appear to the court that the aforesaid agreement had been entered into for the extinguishment of the said claim and trust, and thereupon, at the request and with the consent of the solicitors of the parties, it was ordered that interlocutory decree, declaring said trust and equity, and all orders made in virtue thereof, be vacated; that Maxwell should pay to the plaintiffs $18,000, one-third to Scheurick and wife, one-third to Hicklin and wife, and one-third to and among the children of Alfred Bent, to be paid to their guardian *ad litem;* and that the said Hicklin and wife, Scheurick and wife, and Guadalupe Bent, guardian *ad litem* of the infant defendants, should, within 10 days from the date of that decree, execute and deliver to Maxwell a good and sufficient conveyance of their right.

The bill further sets forth that on the third day of May, 1866, Maxwell paid said sum of $18,000, as directed by the said court, except that the said sum of $6,000 was paid to the said Guadalupe Bent, as administratrix of the estate of Alfred Bent, and not as guardian *ad litem* of the infants; that on the third day of May, 1866, Hicklin and wife executed a like conveyance; and that on the third day of May, 1866, the said Guadalupe Bent undertook to convey to the said Maxwell all right and interest of the said children of Alfred Bent in the premises.

The bill further alleges that by reason of certain errors and irregularities in said proceedings, it is doubtful whether, as against the minor heirs of the said Alfred Bent, it sufficiently appears that they have no equitable or other interests in the said premises; and that such doubt creates a cloud upon the title to the premises, which can only be removed by the interposition and decree of the court; that among other irregularities are the following: That it does not appear, as the fact is, that the agreement for the sale of the equitable interest of the said Alfred Bent was made between the said Maxwell and the said Alfred Bent in the life-time of the latter; that the interlocutory decree should not have been set aside, but should have been modified; that the money payable for the equitable interest of the said Alfred Bent should have been directed to have been paid to the personal representatives of the said Alfred Bent, and not to the guardian *ad litem* of the minor children; that the court ought, by a proper decree, to have adjudged the trust, or the equitable claim, extinguished; and that the court had no jurisdiction to order a conveyance by the guardian *ad litem* of the infants.

The bill further alleged that in fact the share of the said Alfred Bent in said $18,000 had passed into the hands of the personal representatives of the said Alfred Bent, namely, said Guadalupe Thompson, (late the said Guadalupe Bent, widow of the said Alfred Bent, but now the wife of the said George W. Thompson,) who, on the twelfth of April, 1866, was appointed administratrix of the estate of Alfred Bent by the judge of the probate court of the county of Taos; and the bill thereupon prayed that for the errors at law appearing upon the face of the decree of September 10, 1866, the same may be

reviewed and reversed in the points complained of; that the trust aforesaid might be decreed to be extinguished and terminated as against the defendants; and that plaintiffs might be decreed to hold the premises free of all trust in favor of the defendants, and all persons claiming under them, etc.

To this bill the infant defendants filed their answer by their guardian *ad litem,* asserting their infancy, and submitting their rights to the protection of the court. The adult defendants, having previously answered the original bill, filed their answer to the amended bill, responding only to the amendments, and denying that Guadalupe Bent undertook to convey to the said Maxwell the right, title, and interest of the minor children. Their answer to the original bill admits the grant and confirmation thereof; denies that Maxwell and his wife were at any time the sole owners of the premises, as alleged in the bill; denies the conveyance to the Maxwell Land Grant & Railway Company; admits the institution of the suit in equity of the said Alfred Bent and others, heirs at law of Charles Bent, and that the decree was given therein as alleged in the bill; denies that Alfred Bent at any time entered into any such agreement of compromise or sale as alleged in the bill; admits his death and the heirship of the minor children; and as to the proceedings alleged to have taken place at the April term of the court in 1866 refers to the record without admitting the validity or legality of the same, but protesting against the same as illegal, unjust, and void as to the minor heirs of Alfred Bent; denies that the minor heirs of Alfred Bent were in any manner divested of their estate in the grant; avers that Guadalupe Thompson, in making the pretended deed alleged to have been executed by her, was wholly ignorant of her duties and obligations as guardian *ad litem;* avers that the supposed deed of conveyance of the said Guadalupe Bent was illegal and void; and denies that $6,000 have passed into the hands of the said Guadalupe Thompson from the said Maxwell; but admits that a portion of the $6,000 may have so passed, but whether it was paid to her as administratrix or as guardian *ad litem,* she is, and was at the time of the payment, wholly ignorant.

Upon the issues thus raised, depositions were taken, and at the August term, 1873, a final decree was made and entered, declaring that the decree of September 10, 1866, in the Taos district court, was erroneous in sundry particulars, and directing that the said decree of September 10, 1866, given in the Taos district court, be in the said respects vacated and set aside, and that the premises be held by the Maxwell Land Grant & Railway Company, free of all trust in favor of Guadalupe Thompson, either in her own right or as administratrix of Alfred Bent, deceased, the said George W. Thompson, or the said Charles Bent, Alberto Silas Bent, and Juliano Bent, or either of them. An appeal was taken to this court from the said decree, but the same was affirmed. An appeal was then prosecuted to the supreme court of the United States, and in that court the decree was reversed.

On February 25, 1880, there was filed in the office of the clerk of the Taos county district court a mandate of the supreme court of the territory, reciting that the decree of the Taos district court of September 4, 1878, the decree of affirmance given in the supreme court of the territory, and the decree of the supreme court of the United States, whereby the decree of the supreme court of the territory was reversed, and the cause remanded with directions to allow the plaintiffs to amend their bill as they should be advised, with liberty to the defendants to answer any new matter introduced therein; and the order of the supreme court of the territory at the January term, 1880, remanding the cause to the Colfax district court with liberty to amend, etc. At the March term, 1880, of the Colfax district court an order was entered, allowing the plaintiffs to amend their bill as they should be advised, and the defendants were allowed to answer any new matter which should be introduced in such amended bill. The effect of these amendments was to strike from the origi-

nal bill the allegations that the alleged agreement of compromise was entered into in the life-time of Alfred Bent, and aver that it was entered into after his death; to strike out also all the allegations of the bill which charged error in the proceedings had in the Taos district court on the tenth day of September, 1866. On the ninth of April, 1880, the defendants filed their answer to this amended bill, reiterating substantially the allegations and denials of their former answer, but containing also the following allegations and denials, which were struck out upon exceptions to them filed by the plaintiffs, to wit: A denial that the claim of the said Alfred Bent, or of the infant respondents herein after his death, was ever regarded as doubtful or uncertain; averring that, on the contrary, the same was a valid and subsisting claim and right, and confirmed and established by the decree of the court. An allegation that the proceedings had in the Taos district court, on the ninth of April, 1866, or at any subsequent term or terms were illegal, unjust, and void as to the minor respondents. A denial that the decree setting aside the former decree, which established the right and interest of Alfred Bent, was made at the request or with the consent of the solicitors of the respondents, or any of them, or any one having authority to represent them; and an averment that the pretended agreements and the said proceedings were fraudulent as to the infant defendants, and invalid and ruinous, and an illegal sacrifice of the just and valid rights and interests of the said infants; that the interest of the said infants, alleged to have been released and surrendered for the sum of $6,000, was at that time worth not less than $100,000, and was now worth much more. An allegation that the alleged settlement and compromise was not in any way beneficial or advantageous to the infant defendants, or necessary to their support or maintenance. A denial that the sum of $6,000 was paid to the respondents or Guadalupe Thompson as administratrix of Alfred Bent, or at all; but admitting that not exceeding $1,000 may have been paid to her as guardian *ad litem;* that such payment, if made at all, was made in personal property and not in cash, and that neither the estate of Alfred Bent nor the infant defendants ever received any portion of the said $1,000. An averment that the alleged conveyance of Guadalupe Thompson was procured by deceitful and fraudulent representations and practices on the part of the said Maxwell and other confederates with him. An averment that the proceeding, order, and decree setting aside the former decree, which established the right of Alfred Bent in the premises, was obtained by fraud and deceitful practices on the part of said Maxwell.

On the fourth day of April, 1882, Charles Bent filed his petition showing that since the last term of the court he had become of age, and prayed leave to demur or plead to the amended bill, or to file a new answer. At the same term, the complainants obtained leave to amend their bill by striking out the name of Lucien B. Maxwell, and the petition of Charles Bent was allowed. On the same day, Charles Bent filed his answer. This answer, among other averments and denials, contained the following, all of which were afterwards struck out on exception by the plaintiffs:

An averment that by the terms of the decree of the Taos district court of May 29, 1865, one-fourth part of the grant was established and confirmed to the said Alfred Bent, Estefana Hicklin, Teresina Scheurick, their heirs and assigns forever, with full and perfect right, power, and authority to possess and enjoy the same. An averment that Guadalupe Bent, the guardian *ad litem* of the said Charles, Juliano, and Alberto Silas Bent, is a Mexican woman, and at the time of her appointment as guardian *ad litem*, and at the time of her pretended conveyance of the interests of the said wards, and at the time of the entry of the decree setting aside the decree declaring the trust in favor of the said Alfred, Estefana, and Teresina in the lands in question, the said Guadalupe Bent was wholly ignorant of the English language, and unable to read, write, or speak the same; unfamiliar with business or

proceedings of courts; unacquainted with the rights of the said infants; ignorant of the bounds, extent, and character or value of the said grant; ignorant of the fact that the grant had been confirmed by act of congress; ignorant of the entry of the decree of the Taos district court establishing the right of the said Alfred Bent in said grant, and directing partition thereof; and ignorant of what share in the grant was in fact claimed by the said Alfred Bent in his life-time. An averment that in and about the management of her business, property, and affairs, she was at all times wont to consult with and rely upon the advice of the said Scheurick; that Scheurick was then residing near the said Guadalupe Bent, and was always, after the death of the said Alfred Bent, accustomed to profess great friendship and regard for her and her children, and a desire to protect and assist her in the management of the estate and property left by the said Alfred Bent, and to protect the interests of her said infant children; and that by reason of these professions, and the connection in marriage which subsisted between the said Scheurick and the said Alfred Bent in his life-time, the said Guadalupe Bent reposed at all times special trust and confidence in the said Scheurick; that the said Lucien B. Maxwell was at all times aforesaid, and long before that, as the said Guadalupe and the said Scheurick well knew, a man of great wealth and influence; that well knowing the weakness, ignorance, and inexperience of the said Guadalupe Bent, and her want of information as to the extent, value, character, and confirmation of the grant, and of the decree establishing the rights of her infant children, said Maxwell procured her to be appointed guardian *ad litem* of the said infants, and procured the pretended conveyance of the rights of the said infants to be prepared for execution by her, and procured Scheurick to believe and represent, and the said Scheurick did by the procurement of the said Maxwell or otherwise represent, to the said Guadalupe Bent that the said lands were, for the most part, only fit for grazing; that the same contained little or no mineral of value; that it extended only to the northern line of New Mexico; that Maxwell was the owner of the major part of the grant, and would control the whole, and exclude the infants from all their share thereof; that she, the said Guadalupe Bent, was duly authorized to sell and convey the interests of the said infants, and unless she would accept the $6,000, and convey the same to the said Maxwell, neither she nor her infant children would ever realize anything from the interest of the said infants in the grant. An averment that the said Guadalupe Bent, confiding in the representations of the said Scheurick, and not knowing the contrary thereof, and moved by the said representations, and by her knowledge of the wealth, power, and influence of the said Maxwell, the said Guadalupe Bent did assume to execute a pretended conveyance of the interests of the said infants, as in the said bill mentioned; that the conveyance was not read or interpreted to her; that it was executed without the advice of counsel, and at the time thereof the said Guadalupe Bent was in entire ignorance of the character, extent, or value of the grant, and of the rights and shares of the said infants therein. An averment that neither then nor at any time did the said Maxwell pay to the said Guadalupe Bent, in any capacity, the sum of $6,000, or any sum of money whatsoever, for, or on account of, the rights and interest of the heirs of Alfred Bent in the said grant; nor was any such payment, or sum of money whatsoever, made by the said Maxwell, either to the infants, or to any person authorized to receive the same, on behalf of them or either of them. An averment that the grant contains 2,000,000 acres or thereabouts, and abounds in valuable mines of gold and silver, and other minerals and metals; that it contains a large extent of well-watered, irrigable lands, extensive forests of pine and other trees; that all the residue thereof is valuable for grazing; that the interest of the infants at the time of the conveyance to Maxwell was reasonably worth $100,000 or more, and ever since has been appreciating in value, and that the grant in fact extends be-

v 3 N. M.—18

yond the northern boundary of New Mexico; that 200,000 acres, or there-abouts, of valuable lands, situated within the limits of the state of Colorado, are, and always have been, part of said grant; that all these matters were known to Maxwell at the time of procuring the said pretended conveyance, and unknown to the said Guadalupe Bent. An averment that the respondent's ancestor, Alfred Bent, left a considerable estate in houses and lands other than the said grant, and in moneys and personal property; that the said Guadalupe Bent, with said other estate, was then and afterwards well able to support and educate the said infants; and neither then nor at any time was there any necessity for the sale or disposition of the interests of the infants in the grant in question. A denial that said Guadalupe Bent, or any solicitor representing her or either of the said infants, ever requested or consented to the decree of the Taos district court directing that the said Guadalupe Bent should convoy the interests of the said infants to the said Maxwell; or that the said Guadalupe Bent, or any person on behalf of respondents, ever consented or agreed, as in said order and decree is falsely recited; or assented or agreed to the setting aside of the former decree establishing the right of the said Alfred Bent, Estefana Hicklin, and Teresina Scheurick in the said grant. An averment that the entry of the order and decree at the September term, 1866, of the Taos district court was procured in the absence of the said Guadalupe Bent, without notice to her of any intention to apply therefor, and by false representations of the said Lucien B. Maxwell, or the said Aloys Scheurick, or other persons to the respondents unknown, made to the said court, that the said Guadalupe Bent would consent to the entry of the said decree. An averment that all the facts in the answer before set forth, touching the ignorance, weakness, and inexperience of the said Guadalupe Bent, the imposition practiced upon her, the extent and value of the grant, and the estate, real and personal, left by the said Alfred Bent, the ability of the said Guadalupe Bent to maintain and educate said infants, were concealed from the said district court at the time of the decree entered at the September term, 1866; and solely by reason of such concealment and false representations, without any reference to a master, and without any inquiry or judicial examination as to whether the said decree would or would not be beneficial to the said infants, the said district court, at its September term, 1866, gave and entered the decree in the bill set forth. A denial that the said Maxwell did at any time pay the said sum of $18,000 to the persons or in the proportions directed by the said decree. An averment that the decree was made and entered into more than four months after the third day of May, 1866, the date of the conveyance by said Guadalupe Bent. A denial that the sum of $6,000, or any sum, was ever paid to the said Guadalupe Bent in any capacity whatever. A denial that what were alleged to be true copies of the decree and conveyance were in fact so, inasmuch as defendants had never had an opportunity to examine the originals thereof, or compare the same, etc. An averment that, as respondent is advised, the said Alfred Bent, in his life-time, became entitled to and acquired an undivided one-twelfth part of the said grant; and that his heirs at law are entitled to have the same set off to them in severalty. An averment that defendant is advised that by the amended bill it appears that plaintiffs have not any title to the relief demanded, nor hath this court any jurisdiction to entertain the bill; and craves the same benefit of this defense as if he demurred, etc.

As we have already stated, all the averments before recited, both in the answer of the adult and infant defendants, and in the separate answer of Charles Bent, filed by leave of the court, after he had arrived at the age of 21 years, were stricken out upon exceptions. Error is assigned upon the orders of the court sustaining the exceptions filed to these answers. The exceptions filed to the joint and several answers of the adult and infant defendants, and to the additional answer of Charles Bent, are substantially the same; and are,

in substance, that these answers are not responsive to any new matter contained in the complainant's bill of complaint as amended, but are in the nature of a new defense to the allegations of the original bill of complaint in the case, and that they are not in accordance with the mandate of the supreme court of the territory, and to the order of the district court, giving to the defendants leave to answer the amended bill of complaint.

The plaintiffs below appear to have proceeded upon the idea that because the amendments to the original bill of complaint, which they were permitted to make under the mandate of the supreme court of the United States, were made by eliminating from the original bill certain portions thereof, and not by additions thereto, that therefore there was no new matter in the bill which, under the order of the supreme court of the United States, the defendants would be entitled to make answer to. The fact is, however, that by these eliminations the whole character of the bill was radically changed; from being a bill of review, it became a bill for the enforcement of a decree. The main purpose of the original bill was to establish the fact that the agreement of compromise, by which the right of Alfred Bent and his heirs in the Maxwell land grant was to be extinguished, was made during the life-time of Alfred Bent; and that the compromise decree should explicitly set forth that fact, so that it would more clearly appear that the heirs at law of the said Alfred Bent inherited from him no interest in the Maxwell estate. The supreme court of the United States, however, held in this case that the complainants wholly failed to establish that fact. Of course, had the purpose of the original bill been effected, the infant heirs of Alfred Bent could have had no interest whatever in the Maxwell land grant, and all, at most, that they would have been entitled to claim would have been that the sum which it is alleged was to have been paid to their ancestor, and which they say was not paid, should be recovered for them. By the eliminations made in their original bill, the plaintiffs came into court, omitting the averment of compromise during the life-time of Alfred Bent, and averring a compromise made with the plaintiffs in the original bill brought to establish the right of Alfred Bent; and, instead of asking that the consent decree of September 10, 1866, should be modified by declaring the compromise to have been made during the life-time of Alfred Bent, they asked that the decree be enforced as a decree well founded and accurate in its character. Of course the issue, so far as these infant heirs are concerned, became entirely different to the prior issue raised by the original bill. The amended bill in substance charges that the agreement of compromise was made with them, and not with their father. By this amendment their position in the case was most radically changed, and the answer which they could properly make to the original bill was very different to the answer which they would be entitled to make to the amended bill. We think that it was error for the court below to have struck out the matter contained either in the joint and several answer of the defendants, or in

the separate answer of the defendant Charles Bent. The fact that the complainants got leave to and did file an amended bill, would, under the well-settled rules of practice, have entitled defendants to interpose an entirely new answer.

The rule, as laid down by a distinguished author on this subject, is as follows:

"Any amendment to the bill, however trivial and unimportant, authorizes a defendant, though not required to answer, to put in an answer making an entirely new defense, and even contradicting his former answer." 1 Daniell, Ch. Pr. 409.

The position taken by the plaintiff below is that, because the mandate of the supreme court gave liberty to the defendants to answer any new matter introduced in their amended bill, they were thereby limited to answering new allegations of matters that did not appear in the original bill. We do not think that it was the intention of the supreme court to change the rule by which a defendant in every case is entitled to file a new answer to an amended bill. That liberty, as we have seen, is given to them by a well-settled rule, and the supreme court simply, in our opinion, meant to say that, in addition to any answer which they might be advised to interpose to matters set forth in the original bill, as amended, they should have leave to answer any new matter that appeared only in the amended bill. In the view, however, that we take of the amendments to the original bill, we think, as we have already stated, the entire character and purpose of the bill was so changed as that it might be said that the whole amended bill was new matter, to which the defendants would have a right to have answered as they have, under the strictest construction to be given to the language of the supreme court in that regard. These answers constitute, as we think, a direct attack upon the decree which the amended bill seeks to enforce, and should properly have been permitted to stand. Aside from this, there can be no doubt, we think, that the defendant Charles Bent, having arrived at the age of 21, was, as the court held when it permitted him to file an additional separate answer, entitled to a day in court, and to make a new defense, if he chose, to the bill filed against him. We think that the law on this subject is well settled:

"Where an answer has been put in by a guardian on behalf of an infant defendant, and the infant comes of age and is dissatisfied with the defense put in by his guardian, he may apply to the court for leave to amend his answer, or to put in a new one; and it seems that this privilege applies as well after a decree has been made as before." 1 Daniell, Ch. Pr. 170, and numerous cases there cited.

This is the general rule in all cases in which relief has been sought against infants. In cases, however, in which suit is brought to recover moneys alleged to be due from the estate of the infants, a stricter rule prevails, as in cases of foreclosure; but in regard to such cases it is said:

"That in cases of foreclosure, the only cause which can be shown by the infant, after attaining the age of 21, against making the decree absolute, is error in the decree, and that he will not be permitted to unravel the account, nor even redeem the mortgage on paying the amount due.  This strictness, however, must not be understood as applying to cases in which fraud or collusion has been made use of in obtaining the decree."  1 Daniell, Ch. Pr. 172.

Another authority says:

"But there can be no valid decree against an infant by default, or an answer by a guardian; and the infant must generally have a day in court, if, after he is of age, he shows error in the decree.  Tyler, Inf. & Cov. 175; *Mills* v. *Dennis*, 3 Johns. Ch. 367; *Harris* v. *Youman*, 1 Hoff. Ch. 178; *Long* v. *Mulford*, 17 Ohio St. 485.

There are, therefore, these additional reasons why the answer of the defendant Charles Bent should have been permitted to stand as filed.

As we have already stated, this was an action to enforce a decree alleged to have been made by consent, and there are many grave reasons, we think, set forth in the portion of the answers which have been stricken out, why the defendants should have been permitted to attack the decree as they sought to do.  In such a suit as this, the defendants should be permitted to defend against the execution of a decree sought to be enforced; and it is the duty of a court to examine with care such reasons as are alleged against its enforcement, and refuse to enforce it if, upon the evidence, the court is satisfied that the decree itself was erroneous.  The rule on this subject is as follows:

"There can be little doubt, upon the authorities, that the court has full power, upon a bill to carry a decree into execution, to look into the case for the purpose of seeing whether the former decree is equitable and just; and if it is not, to refuse to enforce it."  1 Story, Eq. Pl. § 429, note *a*, and authorities there cited.

The supreme court of the United States, when this case was before them, very properly said:

"A decree for carrying out a settlement and compromise of a suit is certainly not, of itself, erroneous.  When made by consent, it is presumed to be made in view of the existing facts, and that these were in the knowledge of the parties.  In the absence of fraud in obtaining it, such a decree cannot be impeached."  *Thompson* v. *Maxwell*, 95 U. S. 391.

What the defendants now ask to do by their answers, is to impeach this decree for fraud and illegality; and we think that their answers, charging these matters of impeachment, should have been permitted to stand.

It is not necessary for us to consider at this time the other alleged errors.  We think the judgment of the court below must be reversed, with costs.  The case is remanded to that court, with instructions that the defendants be permitted to restore to their answers the portions thereof which were stricken out on exceptions, and thereafter to proceed to final hearing and judgment, in accordance with the

mandate of the supreme court of the United States as to proofs; and it is so ordered.

WILSON, J., concurred.