UNITED THACKER COAL CO.

*v.*

PAUL NEWSOME, *et al.*

(No. 9750)

Submitted April 16, 1946.   Decided May 28, 1946.

*Lafe B. Chafiin,* for appellants.

*Lant R. Slaven,* for appellee.

KENNA, PRESIDENT:

This chancery proceeding was brought in the Circuit Court of Mingo County by United Thacker Coal Company against Paul Newsome, Roy Newsome, William Newsome, Andy Newsome, Tennessee Newsome Coleman, Bettie Hawley, Mary Phillips, Lawrence Newsome, Zona Newsome Umbarger, Georgia Taylor, George Thomas Newsome, Elizabeth Newsome, Hattie Webb, and Jacqueline Newsome, infant, for the purpose of quieting and removing clouds from its title to a tract of 500 acres lying within a boundary of 2159.31 acres in Warfield District of Mingo County. The bill of complaint alleges that the plaintiff is vested with a clear and indefeasible fee simple title to the entire boundary, stating its chain

of title in detail back to the State. The bill rests its prayer for relief upon the alleged fact that Paul Newsome, William Newsome and Georgia Taylor had asserted title to the surface of the 500 acres in question lying on Pawpaw-Billy Branch to be in them and the other heirs-at-law of their father, Isaac Newsome, who died in the year 1935, and prays discovery concerning the instruments that form the claimed title of Isaac Newsome, based on the allegation that there are no such instruments of record in Mingo County and that any instruments adverse to the title of the plaintiff are spurious. The defendants in addition to Paul Newsome, William Newsome and Georgia Taylor are made parties because under any claim of the named three as heirs at law of Isaac Newsome they would necessarily be part owners, the bill's purpose being to establish the invalidity of that claim in its entirety.

The defendants appeared, demurred to the bill of complaint and, after demurrer overruled, had the submission of the cause delayed awaiting the incoming of their joint answer. The right to file an answer was ultimately abandoned, and on final submission January 11, 1945, a decree was entered granting the plaintiff the relief prayed and in general language cancelling and setting aside all instruments of title under which any of the defendants claimed any part of the 500 acres of land described in the bill of complaint adversely to the title of the plaintiff. The plaintiff did not insist upon nor pursue its prayer for discovery, but contented itself with the general language of the decree upon which the trial court granted it a writ of possession.

Since the cause was submitted in the court below upon the undenied allegations of the bill of complaint it comes here as upon demurrer to the bill and objection to the final decree, both based upon the contention that no cloud upon the plaintiff's title has been alleged or shown, and consequently there is no basis for quieting title or removing cloud, and that therefore plaintiff has an ade-

quate remedy at law. Both the demurrer and the objection to the entry of the final decree are based upon that single contention.

The bill of complaint, after having painstakingly set forth the muniments of title under which the plaintiff holds in fee, alleges the circumstances under which the plaintiff acquired title from its immediate predecessor, Mingo Block Oil & Gas Corporation, a summary only of which we can undertake.

According to the undenied allegations of the bill Isaac Newsome, father of the defendants, who the bill alleges assert title adverse to the plaintiff, at the time of his death in 1935 was the land agent of the owners of the title now held by the plaintiff, and as such occupied a part of the 500 acres in controversy. The bill alleges that Isaac Newsome at no time claimed title adverse to that now held by plaintiff, but that after his death in 1935, in the month of May, 1943, Boda Newsome asserted title to an interest in the Pawpaw-Billy Branch lands as an heir-at-law of his father, Isaac Newsome, and caused two deeds, dated August 30, 1943, to be executed by Elizabeth Newsome, widow of Isaac Newsome, in one of which, describing one hundred acres, he was named as grantee and in the other, calling for five hundred acres, he and Okey Newsome were so named, both deeds purporting to convey the fee simple title, and both being recorded in the office of the County Clerk of Mingo County. The bill of complaint alleges that thereafter, on the 6th day of October, 1943, in a chancery proceeding brought in the Circuit Court of Mingo County by Mingo Block Oil & Gas Corporation against Boda Newsome, Andy Newsome and United Thacker Coal Company, the latter being then the vendee in a contract of sale, a decree was entered setting aside as null and void the two named deeds executed by Elizabeth Newsome.

The bill further alleges that prior to the 17th day of May, 1943, the complaint had entered into a contract of purchase with Mingo Block Oil & Gas Corporation. It

then caused an investigation to be made concerning the possession of the 500 acre tract and as a result discovered that Boda Newsome, Paul Newsome, William Newsome and Roy Newsome, with the latter of whom Elizabeth Newsome, Georgia Taylor and Okey Newsome lived, were occupying the 500 acres of land in question, Boda Newsome under a lease executed by Mingo Block Oil & Gas Corporation dated July 14, 1937. On the 17th day of May, 1943, Paul Newsome, William Newsome and Roy Newsome agreed that their possession was that of Mingo Block Oil & Gas Corporation which on that day executed and delivered a lease in writing to them as lessees.

The bill of complaint alleges that the purchase by the United Thacker Coal Company was based upon a record title that at the date of the deed to it on December 29, 1943, showed no claims in conflict therewith and that on that day all persons then in possession of any part of the land conveyed had acknowledged that they were holding under its grantor, Mingo Block Oil & Gas Corporation, and asserted no rights adverse to its title. The leases under which the persons in possession held are filed as exhibits with the bill of complaint.

The bill of complaint alleges in substance that the defendants derived possession from that of their father, the land agent of the plaintiff's immediate grantor; that certain of them asserted hostile title based upon spurious deeds that were later cancelled in a chancery proceeding, and that certain others claimed to hold under a non-existent lease from plaintiff's grantor; and that after investigation it procured acknowledgements from all of the defendants, or from those under whom they claimed, that their possession was held under the title that the plaintiff was then purchasing and now owns. Asserting that the defendants, by repudiating the understanding that they were holding possession under the plaintiff's title, are now claiming title adverse to that of their landlord, the contention of the plaintiff is that the defendants have been and are undertaking to perpetrate a fraud upon it

resulting in damage by impairing the marketability of its title, and otherwise. The defendants' only answer is to stand on their demurrer and upon their objection to the final decree, due to the fact that neither is directed at a specific muniment of title or conveyance prayed to be cancelled as a cloud upon the plaintiff's title or in order to quiet that title. This, we believe, under our West Virginia cases is not necessary.

Prior to the enactment of Chapter 36 of the Acts of the Legislature of 1929 which is now Code, 51-2-2, it was necessary to allege and show possession in order to maintain a cause for quieting title or removing a cloud due to the fact that a person not in possession but wrongfully ousted therefrom could enforce his right by an action of ejectment and therefore had an adequate remedy at law. Since the decision of *Pocahontas Coal Co.* v. *Bower,* 111 W. Va. 712, 163 S. E. 421, it would seem that even where there is a factual controversy concerning boundary lines, or a controverted interlock, where the weight of the evidence is so clearly in favor of the plaintiff that a verdict against him would undoubtedly be set aside, then a proceeding to quiet title or remove a cloud may be maintained, still, of course, requiring allegation and proof of clear legal and equitable title. In this case the admitted allegations of the plaintiff's bill set up clear equitable and legal title. The question of possession under our present statute is not material. However, the bill alleges that the defendants are in possession that was acquired by their father and by them as the tenants of plaintiff's immediate grantor. According to the allegations of the bill, they now claim hostile possession, holding under unrecorded instruments the nature of which is unknown to the plaintiff. The bill prays discovery as to the writings upon which the defendants or any of them base a claim to the right of possession. The defendants' position is that since they are in actual possession the plaintiff has a complete remedy at law and can come into equity only by identifying the instrument it wishes to remove as a cloud or interpret as a means of quieting title. Proceed-

ings *quia timet* are looked upon favorably by our courts of chancery since their purpose is to settle and prevent controversy. *Thompson* v. *Maxwell*, 95 U. S. 391, 399, 24 L. ed. 481. In West Virginia proceedings of that nature are viewed as addressed to the sound discretion of the trial chancellor. *Watson* v. *Wigginton*, 28 W. Va. 533, 578. In unusual cases the proceeding lies to quiet title to personal property.

The second syllabus in *Gilbert* v. *McCreary*, 87 W. Va. 56, 104 S. E. 273, reads as follows:

> "Cancellation of the instrument under which the unfounded claim is set up is ordinarily the means by which cloud is removed from title, but is not exclusive; and the result may be effected by mere adjudication of good title in the plaintiff in such suit, which forever precludes the right so claimed by the defendant."

Here the trial chancellor did adjudicate good title in the plaintiff and bad title in the defendants, awarding the plaintiff a writ of possession. True, the language of the decree is rather sweeping, cancelling all the muniments of title under which the defendants claimed possession. It would seem that with the allegations of the bill of complaint undenied, the plaintiff, under Code, 56-4-65, 66, and 67, could have pursued its prayer for discovery in an effort to discover the instruments to be cancelled before asking a decree couched in general language. However that may be, under the *Gilbert* case, as well as under the case of *Hyman* v. *Swint*, 94 W. Va. 627, 119 S. E. 866, it is not necessary in this jurisdiction in a proceeding to quiet title to allege and show a specific instrument which constitutes a cloud upon the title sought to be quieted. This suggests the more or less academic distinction between a proceeding to remove a cloud and a proceeding to quiet title, but since under our practice those forms of relief may be united in a single proceeding we do not believe that it is here necessary to discuss that difference.

In the state of the record before us we think there is no doubt but that the decree of the trial chancellor shows no error. The bill of complaint alleges a perfect title in fee vested in the complainant and circumstances which at common law would have amounted to what is called "slander of title" for which damages could and still can be recovered under proper circumstances. The question of an adequate remedy at law does not arise because there are no conflicting claims of title presented. The plaintiff asserts title and the defendants do not deny. The defendants simply say to the plaintiff that because it cannot point out why they are on the plaintiff's land by alleging the instruments under which they now claim possession it can remove them from that land only by an action of ejectment. With this, for the reasons stated, we cannot agree. Therefore the decree of the Circuit Court of Mingo County is affirmed.

*Affirmed.*