[Civ. No. 4163. Third Appellate District.—February 26, 1931.]

JERRY SHELLEY, Respondent, v. F. B. HART et al., Appellants.

Inman & West for Appellants.

Fred J. Harris for Respondent.

MR. JUSTICE THOMPSON (R. L.) Delivered the Opinion of the Court.—This is an appeal from a judgment for damages for the breach of a contract for the purchase of an automobile truck, and from an order taxing costs.

The plaintiff held a contract to deliver sixty tons of clay to the Lincoln pottery. He was engaged in hauling this material from a pit at White Rock, a distance of thirty-three miles by means of a Fageol truck. He desired a larger truck which could make greater speed. He purchased an International truck from the defendant for $7,600. He paid $2,500 on the purchase price at the time of the execution of the contract. He was also credited with a further sum of $2,600, the agreed value of a Mack truck which he traded to the defendant on the bargain. The balance of the purchase price was to be subsequently paid.

The chief controversy involves the question as to whether certain printed portions of a form of contract became part of the agreement to purchase the truck. The purchase was consummated at the defendant's place of business. The

plaintiff was handed a copy of the usual form of contract. Most of the blank spaces on the upper half of the front page of this form were filled in by the defendant in typewriting. The spaces regarding the "rated capacity" and the "maximum capacity" of the machine, were left blank. Below the typewriting, near the middle of the front page, a vacant line was left. Upon the lower half of this front page, below the blank line referred to, there were printed several paragraphs containing certain detailed conditions. At the bottom of the page there were blank lines for the signature of the purchaser and the acceptance of the seller. On the opposite side of this document there was a printed warranty. For convenient reference this document will be divided into paragraphs A, B and C. This instrument appears in the following language:

[A]

"Order for International Harvester Motor Truck
"To L. B. Hart      Town Sacramento      State Calif.

The undersigned of Roseville Post Office, County of Placer, State Calif., hereby orders you, subject to all conditions and agreements herein contained, to be shipped on or about the 23 day of June 1928, to J. Shelley One Model 74C International Harvester Motor Truck

Rated Capacity....–Tons; Maximum Capacity......–Lbs. excluding Body Weight

Allowance........–Lbs.

Tire Equipment (Size and Kind) Front 40 x 8 Firestone Pneumatic

                    Rear 40 x 8 Duel Firestone Pneumatic

Style of Cab ¾ Enclosed Cab

Style of Body One 6 Yd. dump body

Other Attachments Six wheel attachment with 40 x 8 Pneumatic

for which I (we) agree to pay $7600.00 F. O. B. Sacramento as follows: $2500.00 on the signing of this order and the remainder of the purchase price to be paid as follows upon delivery or tender of said truck:

Cash: $2600.00 To be allowed on Mack dump truck

$1500.00 on delivery

$1000.00 on thirty day note

"Jerry Shelley"

[B]

"In addition to paying the purchase price, the purchaser agrees to reimburse the seller for any amounts the seller has paid or may be required to pay on account of present or future U. S. excise taxes imposed upon any articles herein ordered or in connection with the purchase or sale thereof.

"In case of failure to make any payment when .due the entire balance of the purchase price and all notes given therefor shall, at the election of the seller, become at once due and payable. It is agreed that title to the property herein ordered shall not pass to the purchaser until the full purchase price, and all notes given therefor have been paid in cash, but nothing herein shall release the purchaser · from payment therefor, and after delivery to the purchaser said property shall be held and used at his risk and expense with respect to loss or damage and taxes and charges of every kind.

"Whenever the seller retains title or a lien or mortgage to secure deferred payments of the purchase price of a truck sold hereunder, the seller, unless otherwise agreed at the time, will take charge of insuring said truck against fire and theft for the benefit of all parties concerned for a period of one year from the date of delivery or until the maturity of the last deferred payment if maturing later than one year, the expense of said insurance to be covered by the time finance charge made against the purchaser for interest, handling and insurance.

"The purchaser agrees that the seller shall not be responsible for delay or failure to supply the goods ordered herein where prevented by act of God, strikes, fires, war conditions, Governmental action or other causes beyond his reasonable control, nor for damage or loss during transportation. In case the purchaser refuses to receive and pay for said property in full as above provided, the seller may retain as liquidated damages all moneys paid on account of said property, not exceeding, however, twenty-five per cent of the purchase price.

"The motor truck herein ordered is sold under the Regular Printed Warranty given by the International Harvester Company of America as printed on the back hereof and no others. The purchaser agrees that this order contains the

entire agreement relating to the sale of said motor truck and that he has received a true copy thereof.

"Note: If this order is addressed to the International Harvester Company of America, it is subject to the written acceptance of one of its Branch. Managers. Purchaser's deposit to be returned if not accepted.

Accepted ...... at ........

.................. Branch Manager

Order dated this ........ day of ........ 192...

........................)
                         )
........................)
                Purchaser

Order taken by

........................"

[C]                    "Warranty

"The International Harvester Company of America (Incorporated) warrants each new International Motor Truck to be free from defects in material and workmanship under normal use and service, its obligation under this guaranty being limited to making good at the factory any part or parts thereof, which shall within ninety (90) days after delivery of such truck to the original purchaser be returned to its Branch House or factory with transportation charges prepaid and which examination shall disclose to the Company's satisfaction to have been thus defective.

"This warranty shall not apply to any motor truck which shall have been operated at a speed exceeding the factory rated speed or loaded beyond the factory rated capacity as indicated on the plate attached to each truck, nor to any motor truck which shall have been repaired or altered outside of the Company's branch office or factory in any way so as, in said Company's judgment, to affect its stability or reliability, nor which has been subject to misuse, negligence or accident.

"The above warranties are in lieu of all other warranties express or implied and no person, agent or dealer is authorized to give any other warranties on the Company's behalf or to assume for it any other liability in connection with any motor truck.

"No warranties whatever are given in respect to tires, rims, electrical apparatus, horns, signaling devices, generators, batteries, speedometers, hubometers, or other trade

accessories inasmuch as they are usually guaranteed separately by their respective manufacturers.''

The plaintiff signed the foregoing instrument on the blank line beneath the typewritten portion near the middle of the front page. The printed conditions were all below his signature. The warranty was printed on the back of the form. The plaintiff testified that at the time he signed this document, he handed it back to the agent of the defendant, saying, ''I am signing what is above my signature; I am not agreeing to anything below.'' It was stated by the plaintiff that it was agreed by the parties only that portion of the document which appears above his signature was to become the written contract, but that other conditions and guaranties were subsequently orally agreed upon. There is a conflict in the evidence regarding these matters.

The suit is based upon a claim for damages for breach of contract with respect to the subsequent oral agreement regarding the capacity, equipment and ability of the truck to perform. The chief contention is that the truck was guaranteed to travel twenty-eight miles an hour with a load consisting of six cubic yards of clay, whereas the plaintiff was able to drive it only nine miles an hour, and that he was thereby damaged in a substantial loss of profits.

The complaint alleges that the defendant orally represented that the truck had a capacity of six cubic yards of sand or gravel which it was capable of hauling from the pit to Lincoln at a speed of twenty-eight miles an hour; that it would be equipped with six stock wheels with dual firestone pneumatic tires, together with one spare wheel interchangeable on all axles of the trucks; that it would also be equipped with an automatic self-starting contrivance and an automatic air-pump to be attached to the motor for the purpose of inflating the tires; that the defendant was familiar with the truck then in use by the plaintiff, and with the clay-pit from which he was engaged in hauling materials together with the highway over which he was transporting the sand and clay, and assured the plaintiff that the new truck would haul as much material and make as good time as the Fageol truck then operated by the plaintiff. It was then alleged the foregoing representations were each false; that the truck would not haul a load of six cubic yards of sand or gravel from the pit, and when

loaded to capacity would not attain a speed in excess of nine miles an hour; that the truck was not equipped with a self-starter or automatic pump, and that the spare wheel was not interchangeable on any of the axles of the machine.

All the material allegations of the complaint were controverted by the defendant. In a cross-complaint the defendant set up the document heretofore quoted as an exhibit and alleged the entire instrument constituted the sole contract of sale; that the only guaranty with respect to the truck, its equipment or ability to perform is limited to the express provisions of the contract. The defendant then alleged the nonpayment of the balance of the purchase price of the truck in the sum of $2,500 and prayed for judgment for that amount. The case was tried with a jury. A verdict for damages in the sum of $1500 was rendered in favor of the plaintiff. A separate verdict for the sum of $2,500 was rendered in favor of the defendant on its cross-complaint, for the unpaid portion of the purchase price of the truck. On a motion to tax costs, the court found that the plaintiff was entitled to $224.20 costs, and the defendant was entitled to recover $64.80 costs. The defendant appealed from the judgment for damages which was rendered in favor of the plaintiff, and also from the order allowing plaintiff his costs of suit.

At the trial, over the objection of the appellant, the plaintiff was permitted to testify to the circumstances accompanying his signature of the purported contract of purchase, and that it was not the intention of the parties that paragraphs designated as ''B'' and ''C'' were to become a part of their written agreement. The plaintiff said that he told the defendant's agent, ''I am signing what is above my signature; I am not agreeing to anything below.'' Thereafter the court refused to admit in evidence paragraphs ''B'' and ''C'' of said document. Over the objection of the appellant, to the effect that it tended to vary the terms of a written agreement, the plaintiff was permitted to testify to alleged terms and conditions of the sale in conflict with the provisions of paragraphs ''B'' and ''C'' of the foregoing document. Over the objection of the appellant the plaintiff was also permitted to testify to a measure of his alleged damages based upon his expectation of being able, under the defendant's guaranty, to haul

from the pit three loads a day of not less than six cubic yards of material, the average net weight per load being in excess of 21,000 pounds.

The appellant contends that, (1) The court erred in permitting the plaintiff to testify that paragraph "A" of the foregoing document which appears above the signature of the plaintiff was the only portion of that written instrument which binds the parties, (2) The court erred in refusing to admit in evidence paragraphs "B" and "C" of the alleged contract, (3) The court erred in admitting evidence of alleged terms and conditions of the sale in conflict with the last two sections of the written agreement, and, (4) The court erred in allowing plaintiff costs of suit.

■ We are of the opinion the court did not err in permitting the plaintiff to testify that he signed the first portion of the order of sale, herein designated as paragraph "A", with the intent and understanding that he was not to be bound by the printed portions of the document which followed his signature. The chief issue of the case was whether the printed paragraphs which we have designated "B" and "C" were intended to become a part of the written agreement for the purchase of the truck. Upon this subject there is a conflict of testimony. It became a question of the identity of the real contract. ■ Under the circumstances of this case, the question as to what part of this document was intended by the parties to become their written agreement was one of fact to be determined by the jury. This question of fact must be decided from all the circumstances surrounding the execution of the document including the form, contents and relative provisions of the entire instrument. The jury was clearly instructed, "It is exclusively for you to determine, as a question of fact, . . . whether that portion of the printed document, from the beginning thereof extending down to and including the signature of Jerry Shelley . . . constituted a memorandum of the agreement between plaintiff and defendant F. B. Hart, . . . and whether or not it contained all of the terms and conditions entering into the agreement contemplated by said parties. . . . " The jury was further instructed that if they found that the parties, at the time of the signing of the document in question intended that the entire instrument should constitute their agreement for the purchase of

the truck, then "All of these terms and conditions made and constituted the contract between the parties." These instructions fairly presented to the jury the question as to whether the contracting parties intended to be bound only by the first portion of the written instrument which appears above the signature of the plaintiff, or by the entire document.

It is a cardinal rule that the parol evidence may not ordinarily be received to contradict or vary the unambiguous terms of a written instrument. (Jones on Evidence, 3d ed., p. 656, sec. 434.) When a contract for the purchase of personal property is executed on a printed form, which contains certain specific conditions which are printed at the bottom of the instrument or upon the back thereof, to which no reference is made in the preceding contract, and which are readily severable therefrom and the signature of the purchaser appears above these printed portions, it may become a question of fact as to whether the contracting parties intended to adopt the separate printed conditions as a part of their contract. Under such circumstances extrinsic evidence is competent to determine just what portion of the document constitutes the real contract. Certainly it is proper to admit evidence to identify the document which is relied upon as a contract to bind the parties. It is a primary rule in the construction of contracts to ascertain and render effective, if possible, the mutual intention of the parties, so far as this may be done without violating legal principles. (13 C. J. 523, sec. 482.) Since there was a clear issue of fact tendered by the pleadings in the present case as to what portions of the document the parties intended to include as their contract, we are of the opinion the court did not err in admitting oral evidence upon this subject.

The court sustained an objection to the defendant's offer to introduce in evidence the remaining printed portions of the document following the signature of the plaintiff. Since there was an issue as to whether these portions of the instrument were component parts of the contract, and the jury was entitled to consider the language of paragraphs "B" and "C" in determining whether the context thereof had any application to or became a part of the

preceding portion of the instrument, the entire document should have been admitted in evidence.

The appellant contends that it was error to admit testimony regarding conditions of the alleged contract subsequently agreed upon which are in violation of the printed terms of the document, for the reason that such evidence tends to vary the terms of the contract. Assuming that the parties intended to deliberately exclude from their contract the printed terms and conditions thereof appearing in paragraphs "B" and "C," oral evidence of other conditions subsequently adopted which are not in conflict with the terms of the instrument which the plaintiff did actually sign is competent. Moreover, the document which was signed by the plaintiff contains certain blank spaces regarding the rated and maximum capacity of the truck, which omissions it was competent to supply by oral evidence. On page 672 of Jones on Evidence, third edition, section 441, it is said: "Where the contract is manifestly incomplete, or where an agreement wholly independent of and collateral to the written instrument is entered into, parol evidence is admissible."

On page 668 of the last cited authority, section 439, it is further said: "The general rule is not violated by allowing parol evidence to be given of the contents of a distinct, valid, contemporaneous agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement."

Assuming that the alleged guaranty of the defendant with respect to the equipment, capacity and maximum speed of the truck was made subsequent to and distinct from the negotiations which became a part of the actual written contract, oral evidence thereof was competent. The questions as to whether these stipulations were or were not made at the same time, and whether they were made as a part of the transaction represented by the written agreement, were problems for the determination of the jury under the circumstances of this case.

Evidence was adduced over the objection of the defendant to the effect that he guaranteed the truck would carry a load of six cubic yards of gravel or sand from the pit at White Rock to Lincoln, over the highway, at a rate of speed of twenty-eight miles an hour; that this load of

material together with the truck weighed approximately 21,000 pounds; that the plaintiff was unable to operate the truck with this load at more than nine miles an hour; that the plaintiff held a contract to haul sixty tons of clay to the pottery; that he was paid $1.75 per ton for hauling the material; that relying on the representations of the defendant he planned to make three round trips per day which would enable him to earn $40 a day, but on account of the substantial decrease in the guaranteed rate of speed his income was materially diminished. The plaintiff testified: "I expected to make three round trips a day and have six yards to the trip, for which I was paid $1.75 per ton, which would be about $40.00 per day; the distance one way from the pit to the pottery is about thirty-three miles. Q. If the International truck that you purchased had been able to pull a six-yard load of gravel, or clay, out of the pit at White Rock, and cover the distance between White Rock or the gravel pit, and the Lincoln pottery, at the rate of 28 miles per hour, how many loads could you have carried per day with that truck? A. Three."

It will be observed the measure of damages upon which the plaintiff relies, was his loss of income based upon his inability to haul three loads of material each day which, together with the truck, weighed approximately 21,000 pounds, over the state highway at a rate of twenty-eight miles an hour. The plaintiff's profit therefore depended upon his violation of section 118 of the California Vehicle Act as it then existed. (Stats. 1927, p. 1439.) That section then provided:

"Speed limit for vehicles regulated according to weight and tire equipment.

"(a) In addition to any other regulations imposed by this act it shall be unlawful for the driver of any vehicle, or combination of vehicles, the gross weight of which, including any load thereon is eighteen thousand pounds or more, to drive the same upon a public highway at a speed in excess of twenty miles per hour."

This was clearly a measure of damages based upon a violation of the statute, and therefore incompetent. Objections to this line of evidence should have been sustained. In 17 C. J., page 797, section 119, it is said: "Loss of profits may not be considered as an element of damages, where the

business from which they would have resulted was, or would have been, conducted in violation of law."

It is impossible to determine what proportion of the verdict for damages is based upon this illegal estimated rate of speed. The evidence regarding this measure of damages was clearly erroneous, and requires a reversal of the judgment.

■ Finally the appellant contends that it was error for the court to award the plaintiff his costs. It is asserted that since the defendant recovered judgment on its cross-complaint for an amount in excess of the damages recovered by the plaintiff, the defendant is entitled to its costs, and the court has no discretion to apportion the costs of suit. The plaintiff recovered judgment for damages for the sum of $1500. Upon its cross-complaint, for a claim growing out of the same transaction, the defendant recovered judgment for $2,500. In effect, this amounts to a judgment in favor of the defendant for the net sum of $1,000. Judgment should have been entered for this net sum in favor of the defendant. (Sec. 666, Code Civ. Proc.; *Poswa* v. *Jones,* 21 Cal. App. 664 [132 Pac. 629].) Since this is not an equitable action, the court had no discretion to apportion costs. The net result of the judgment being favorable to the defendant, it is entitled to an award of its costs to suit. The order taxing costs in favor of the plaintiff was therefor erroneous.

Section 1024 of the Code of Civil Procedure provides: "Costs must be allowed of course to the defendant upon a judgment in his favor in the actions mentioned in section 1022. . . ."

This includes actions "for the recovery of money". Section 666 of the Code of Civil Procedure provides that, "If a counter claim, established at the trial, exceed the plaintiff's demand, judgment for the defendant must be given for the excess. . . ."

The costs follow the judgment in this case as a matter of course.

The judgment and the order taxing costs are reversed.