299 P.2d 1114

'Echo NEY, Trustee, Wasatch Homes, Inc., a corporation, Plaintiff and Appellant,

v.

G. T. HARRISON and Alda J. Harrison, Defendants and Respondents.

No. 8437.

Supreme Court of Utah.

July 3, 1956.

218

Gordon I. Hyde, Salt Lake City, for appellant.

Sumner J. Hatch, James L. Barker, Jr., and E. W. Clyde, Salt Lake City, for respondents.

CROCKETT, Justice.

This action was brought to recover a commission of 2½% claimed due for selling the Snow Apartments in Salt Lake for G. T. and Alda Harrison, the defendants. Plaintiff is the assignee of creditors of Wasatch Homes, Inc., a licensed real estate broker who sold the apartments. Alda

failed to answer the complaint and a default judgment was entered against her. The trial court later relieved her default. Both of the Harrisons then defended on the merits, and judgment went against plaintiff on the theory that the Harrisons had never entered into any written agreement employing Wasatch Homes, and therefore the contract was unenforceable because of our Statute of Frauds, later referred to.

The issues raised on appeal are whether defendant Alda was properly relieved of default, and whether there existed a sufficient note or memorandum in writing between Wasatch Homes and the Harrisons to satisfy the Statute of Frauds.

Rule 60(b) of the Utah Rules of Civil Procedure lists the instances in which a court may, in the furtherance of justice, open a judgment obtained by default. Six specific categories are set forth: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) summons not personally served upon a defendant and defendant has failed to appear; (5) void judgment; (6) satisfaction, release or discharge of judgment, or reversal or vacation of the prior judgment upon which the default was based. In addition, subsection (7) permits the judgment to be opened for "any other rea-

son justifying relief from the operation of the judgment." Relief upon the first four grounds must be sought within three months from entry of the judgment; and upon the others "within a reasonable time". Defendant Alda did not request relief until nearly 11 months had elapsed, and hence the only applicable section of Rule 60(b) upon which she could rely was (7).

Alda's motion was supported by an affidavit in which the major ground for relief was that she had mistakenly believed that she was fully protected by a divorce decree ordering her ex-husband, G. T. Harrison, to pay any real estate commissions arising from the sale of the Snow Apartments.

Plaintiff urges that this type of mistake is a mistake of law and not within the purview of Rule 60(b), and argues that if relief be justified in this type of case, it will destroy the firmly established policy that judgments should be final so that confidence can be reposed in them. Plaintiff points out that Rule 60(b) is in derogation of the common law rule that all judgments become final after the close of the term, and places reliance on the rule that statutes in derogation of the common law must be strictly construed. We are aware of such a rule

but it has no application in the law of this state.

Our civil code expressly provides:[1]

*"The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of this state. The statutes* establish the laws of this state respecting the subjects to which they relate, and their provisions and all proceedings under them *are to be liberally construed with a view to effect the objects of the statutes and to promote justice.* Whenever there is any variance between the rules of equity and the rules of common law in reference to the same matter the rules of equity shall prevail." (Emphasis added.)

The statutory authority[2] of trial courts to set aside judgments obtained by default has been liberally construed to the end that there be trial on the merits, beginning with our earliest decisions.[3] In the recent case of Warren v. Dixon Ranch Co.,[4] we had occasion to review the policy considerations and reaffirmed the attitude of liberal construction, thus:

"The allowance of a vacation of judgment is a creature of equity de-

---

1. Section 68–3–2, U.C.A.1953.
2. Rule 60(b) is substantially the same as former Section 104–14–4, U.C.A.1943; Rev.Stat.1898, § 3005; 2 Comp.Laws 1888, § 3200; Comp.Laws 1876, § 1293, p. 417.

3. E. g., Utah Commercial & Savings Bank v. Trumbo, 17 Utah 198, 53 P. 1033.
4. Utah, 260 P.2d 741, 742.

signed to relieve against harshness of enforcing a judgment, which may occur through procedural difficulties, the wrongs of the opposing party, or misfortunes which prevent the presentation of a claim or defense. * * * Equity considers factors which may be irrelevant in actions at law, such as the * * * hardship in granting or denying relief. Although an equity court no longer has complete discretion in granting or denying relief it may exercise wide judicial discretion in weighing the factors of fairness and public convenience, and this court on appeal will reverse the trial court only where an abuse of this discretion is clearly shown."

The trial court could well regard this as among the class of cases that Rule 60(b) (7) was intended to govern and to permit Alda to justify her failure to answer on the ground that the divorce decree required her husband to bear the obligation and required him to defend the action for her.

In reaching this conclusion we are not unmindful of the various authorities adverted to by counsel for plaintiff, but find them distinguishable either upon their facts,[5] or upon the practice act of the state involved.[6] The Utah decisions relied upon by plaintiff recognize the firmly established principle that it is largely within the discretion of the trial court whether a default should be relieved,[7] which discretion will not be disturbed unless there is a patent abuse thereof.

■ The more serious issue is whether the defendants are bound to pay a brokerage commission to plaintiff. There is ample evidence that the defendants orally agreed to employ Wasatch Homes, Inc., as brokers, and to pay them for effecting the sale. However, defendants have pleaded that the contract is unenforceable because of Section 25–5–4, U.C.A.1953, which provides:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, is in writing subscribed by the party to be charged therewith:

*   *   *   *   *   *

"(5) Every agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation."

The Harrisons did not sign a listing agreement. Alda testified that she requested Wasatch Homes to help her in obtaining a purchaser for the Snow Apartments.

5. E. g., Weinberger v. Manning, 50 Cal.App. 2d 494, 123 P.2d 531 (Defendant refused to hire counsel although she had been advised to do so and had general experience with lawyers. Entire conduct showed contemptuous disregard of legal process.)

6. E. g., Ross v. San Diego Glazed Pipe Co., 50 Cal.App. 170, 194 P. 1059; Durbow v. Chesley, 24 Cal.App. 416, 141 P. 631.

7. Warren v. Dixon Ranch Co., Utah, 260 P.2d 741; Peterson v. Crosier, 29 Utah 255, 81 P. 860.

but she did not sign any written listing because the Harrisons were experiencing marital troubles and she was having trouble getting G. T. Harrison to cooperate. Pursuant to her request, Wasatch Homes did secure prospective purchasers and obtained their signatures on an earnest money receipt. Alda then told Wasatch's salesman to go to Helper, Utah to get the signature of her husband, G. T. Harrison, which they did. The earnest money receipt and offer to purchase contained the following paragraph:

"The seller agrees in consideration of the efforts of the agent in procuring a purchaser, to pay said agent a commission equal to the minimum recommended by the Salt Lake Real Estate Board. In the event seller has entered into a listing contract with any other agent and said contract is presently effective, this paragraph will be of no force and effect."

A discussion was had concerning the commission, which is usually 5% on such transactions. Harrison refused to sign, stating that he would not pay more than 2½%. Pursuant to such conversation, the salesman inserted the following handwritten notation beneath the paragraph just quoted above:

"Wasatch Homes is to receive a commission of 2½% which is Total Commission."

G. T. Harrison then signed immediately below this notation. The salesman returned to Salt Lake City, obtained Alda's signature and the transaction was consummated.

The trial court found that the writings above set out were not sufficient to satisfy the requirements of the Statute of Frauds, apparently on the basis of the case of Smith Realty Co. v. Dipietro.[8] However, analysis of that case will indicate a substantial difference in the relationship of the broker to the parties. That case also involved an action to recover commission on the exchange of certain properties. The following clause was included in their agreement:

" 'The respective parties hereto agree to pay the [realtor], the authorized broker for effecting the sale and exchange of properties the commissions as follows: The sellers agree to pay a commission in the sum of Five Hundred Dollars and the buyer agrees to pay a commission in the sum of Three Hundred Thirty-three and 33/100 * * * Dollars. Said commissions payable to the [realtor] at their [address given]. * * *' "

The broker neither pleaded nor proved any contract expressly employing him in writing or otherwise, but relied on the recital pertaining to the payment of a brokerage fee. The court regarded the recital as

8. 77 Utah 176, 292 P. 915, 916.

merely incidental to the contract and therefore ruled that it conferred no rights on the broker; and accordingly that it could not be construed as a memorandum in writing employing the broker to satisfy the Statute of Frauds in the broker's behalf, with which we do not disagree.

We are cognizant that decisions of courts have varied widely as to the sufficiency of writings which will suffice to meet the Statute of Frauds. Many of the decisions are explainable on the basis of substantial differences in the statutory provisions and terminologies, and in factual distinctions. But the explanation of other decisions lies only in which of the two policies implicit in the statute the particular court felt was paramount: The protection of the landowner from the imposition of spurious claims by real estate brokers, or the necessity of protecting the broker, who has rendered a bona fide service, from being refused just compensation for his work by the landowner.[9]

In assaying whether the particular writing meets the requirements of our statute, the problem is considerably simplified if we carefully observe that our statute, unlike that of many states,[10] does not call for the contract itself to be in writing; it is enough if there is "some note or memorandum thereof" which evidences the contract. The instant case appears to come within the doctrine of Hawaiian Equipment Co. Ltd. v. Eimco Corp.,[11] which approved the rule of the Restatement of Contracts:[12]

" 'A memorandum, in order to make enforceable a contract within the Statute, may be any document or writing, formal or informal, signed by the party to be charged * * * which states with reasonable certainty,

" '(a) each party to the contract either by his own name, or by such a description as will serve to identify him, * * * and

" '(b) the land, goods or other subject-matter to which the contract relates, and

" '(c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.' "

It will be noted that here the agreement identified the parties, the subject matter,

9. See Annotations, 80 A.L.R. 1456, 1457; 65 A.L.R. 1423.

10. See 2 Williston, Contracts, Sec. 579 n. 6 and authorities there cited.

11. 115 Utah 590, 207 P.2d 794, 797.

12. Rest. Contracts, Sec. 207.

and set out the conditions of the transaction with adequate certainty to meet the above requirements. Consequently, the memorandum evidencing the obligation of the Harrisons to pay the 2½% commission was sufficient to satisfy our statute. We reach this result on the facts here presented notwithstanding anything that may have been said in the Depietro case, supra.

At the trial defendants offered to show certain set-offs against the plaintiffs. The trial court's decision that there was no enforceable contract made it unnecessary to try these issues and no findings were made on such claims. The case is remanded with instructions to enter judgment for the plaintiffs as to the commission and to allow such further proceedings as the court may deem proper in respect to the claimed set-offs.

Costs to appellants.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

HENRIOD, Justice.

I dissent. It seems to me that the main opinion has assumed a false premise: That plaintiff seeks recovery on an oral contract which admittedly was unenforceable under the Statute of Frauds, but for a written memorandum which took it out of that statute. The plaintiff did *not* seek recovery on that theory, but *alleged a written contract* between the Neys and Harrisons, in which the latter expressly agreed to pay a real estate commission to the broker. The plaintiff set forth the agreement and pleaded that "the defendants have failed and refused to pay the commission *provided for in said agreement."* The plaintiff did not claim to be a party to that agreement, and as a matter of fact, was *not* a party thereto. No effort was made to amend the pleading mentioned. This case comes to us simply as a case where A agreed with B that he would pay C a commission. Such an agreement is not enforceable by C unless it has the elements of a contract for the benefit of a third party,—either the donee beneficiary type or the creditor beneficiary type. There is no donee beneficiary type here since there is no indication that anyone intended the Harrisons to make a gift, and there is no creditor beneficiary type here since there is no indication whatever that Harrisons' promise was made to satisfy any obligation or claim that the broker might have had against the Neys.

This court in a unanimous decision has rejected the idea that a broker could enforce such a promise made between two

other persons to a contract where he was not a party, and has gone so far as to say such a contract cannot be treated even as a memorandum for the purpose of taking an oral real estate broker's employment contract out of the Statute of Frauds.[1] That case is based on sound principles and should not be treated lightly or reversed, as the main opinion in effect has done. The rule that the majority opinion is laying down will emasculate the Statute of Frauds relating to brokers' employment contracts, which, after this case, may be wholly oral if the reference, for many years customarily inserted in earnest money agreements, is made with respect to payment of a real estate commission,—a reference found in a contract between others in which the broker is not a party, and found in a contract whose terms the broker could not enforce. The rule laid down by the main opinion, I am convinced, violates fundamental principles of contracts. I earnestly urge that we do not have to decide this case, nor can we justify the main opinion, on the basis of an oral contract buttressed by a written memorandum, but can decide it simply on the basis of failure of pleading and proof, as we did in Taylor v. E. M. Royle Corp.,[2] a case about which the main opinion casts doubt.

1. Dipietro case cited in main opinion.