Shirley GILLMOR, as Personal Represen-
tative of the Estate of Stephen T. Gill-
mor, Plaintiff and Appellant,

v.

Dennis K. WRIGHT, Sara C. Wright,
David L. Wright, and Rona R. Wright,
Defendants and Cross–Appellants,

and

Charles F. Gillmor and Edward Leslie
Gillmor, Intervenor–Defendants,
Appellees and Cross–Appellants.

No. 890257.

Supreme Court of Utah.

March 22, 1993.

James B. Lee, John B. Wilson, Salt Lake City, for Shirley Gillmor.

D. Gilbert Athay, Salt Lake City, for Charles Gillmor and the Wrights.

R. Stephen Marshall, Richard C. Skeen, Salt Lake City, for Edward Gillmor.

HOWE, Associate Chief Justice:

Plaintiff Shirley Gillmor, personal representative of the estate of Stephen T. Gillmor, seeks injunctive relief and damages from the Wright defendants.[1] The Wrights allegedly interfered with hunters who had purchased permits to hunt on Shirley's land. Edward Leslie Gillmor and Charles F. Gillmor intervened as defendants and brought counterclaims against Shirley, seeking an award of an easement over Sawmill Canyon Road as it traverses Shirley's property. Edward and Charles alleged in their counterclaims that they were entitled to an easement by implication and by necessity over the road. They also asserted that the legal description of the easement over the road which was awarded to them in a 1981 partition decree to which they were parties should be reformed because of a mutual mistake of the parties. All claims and counterclaims were eventually dismissed by the trial court sitting without a jury. Shirley appeals, and Edward and Charles cross-appeal.

## I. SAWMILL CANYON ROAD EASEMENT

This action involves approximately 5139 acres of real property located in Summit County known as the Sawmill property. Before 1981, Shirley's predecessor in interest, Florence Gillmor, together with Edward and Charles, owned the entire acreage as tenants in common. They also jointly owned other properties located in Salt Lake, Tooele, Wasatch, and Summit Counties consisting of approximately 33,000 acres.

In 1974, Edward commenced an action against Florence and Charles to partition all 33,000 acres. In 1981, a decree was entered which partitioned the Sawmill property among the three owners. This court

1. Stephen Gillmor filed this action in 1986, but he died in 1988.

affirmed that decree. *Gillmor v. Gillmor*, 657 P.2d 736 (Utah 1982).[2]

Sawmill Canyon Road is an unimproved dirt road that runs north from an east-west frontage road near Interstate Highway 80 in Echo Canyon. The road is quite steep and follows the bottom of Sawmill Canyon up to the top of a mountain on Shirley's property. The canyon is narrow, with steep walls and cliffs on both sides of the road. The cliffs cannot be crossed by vehicles or livestock. From the mouth of the canyon, the road traverses the property owned by the Wright defendants and then rises rapidly in a northerly direction as it crosses the western portion of the property of Charles, Edward, and Shirley, in that order. After reaching Shirley's property, the road veers to the northeast. It then turns south, running back across the eastern portions of property owned by Edward and Charles along Thirtyfive Canyon.[3] After the partition decree was entered in 1981, the parties allowed Stephen Gillmor to use the entire Sawmill property until 1983. From 1983 to 1987, Edward used the full length of the road. Then, after four years had passed without objection from Shirley, she protested Edward's and Charles' use of the road over her property beyond a point known as the Forks.

The partition decree provided, "A roadway and stock trail easement is hereby reserved," and then gave a metes and bounds description of the easement. The description terminates in the south end of the property awarded to Florence (now owned by Shirley) at the Forks and does not give Edward or Charles access by road to the eastern parts of their properties.

The trial court in the instant action found that "Edward Gillmor and Charles Gillmor do not have traditional grazing access to eastern portions of their Sawmill parcels unless they are allowed access over parcels awarded to Florence Gillmor and now owned by Shirley Gillmor." However, the court further found that in entering the partition decree in 1981, the trial court did not intend to provide Edward and Charles access over the parcel awarded to Florence beyond the Forks. The court apparently found support for that finding in our decision in the partition case, where we stated that historical uses of property were not sacrosanct and that Edward's ranching activities would be affected because the land as partitioned may be less usable for grazing. *Gillmor v. Gillmor*, 657 P.2d at 740–41. We review these findings of fact under the clearly erroneous standard. Appellants must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the findings are so lacking in support that they are against the clear weight of the evidence, thus clearly erroneous. *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989); *see also* Utah R.Civ.P. 52(a). On appeal, we disregard the labels attached to findings and conclusions and look to the substance. *State v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990); *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 656 (Utah 1988). Therefore, that which a trial court labels a "finding of fact" may be in actuality a conclusion of law, which we review for correctness. *E.g., Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

The trial court concluded that neither Edward nor Charles was entitled to extend the described easement by either necessity or implication.[4] The court stated that its refusal to extend the easement was based on "traditional notions of finality inherent in the doctrines of *res judicata* and collateral estoppel." The court found that the source of the mistake alleged by Charles and Edward was an exhibit, offered in the partition case by Charles and Florence,

2. The partition decree was affirmed except as to the Old Ranch property, a property unrelated to the present action.

3. See topographical map attached as appendix to this opinion.

4. Edward and Charles argued alternative theories of relief to extend the easement description: easement by necessity, easement by implication, and mutual mistake of fact. Because we hold that a mistake of fact occurred, we have no need to reach the other theories advanced.

which contained metes and bounds descriptions for the easements. Although he was expressly cautioned to do so by the court in that case, Edward failed to review the exhibit. Under the circumstances, the trial court in the instant case concluded that it was "inappropriate and unwise to invoke the catch-all provision of rule 60(b)(7) to grant relief from the final judgment." Finally, the trial court determined that this was a case "where the finality of judgment should not be undermined over eight years after its entry and six years after its affirmance in response to assertions which suggest at the most, 'mistake, inadvertence, surprise, or excusable neglect.'" Therefore, the court declined to grant the relief sought under 60(b).

■ "A motion or action to modify a final judgment is addressed to the discretion of the trial court, the exercise of which must be based on sound legal principles in light of all relevant circumstances." *Laub v. South Central Utah Tel. Ass'n*, 657 P.2d 1304, 1306 (Utah 1982). That court's determination will be reversed only upon a showing of an abuse of discretion. *Id.*

■ Edward contends that the description of the easement in the partition decree is erroneous and that the error occurred as a result of a mutual mistake of fact. He seeks to correct the mistake through his counterclaim in this action under rule 60(b), Utah Rules of Civil Procedure. That rule allows a court to entertain "an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court."

In the findings of fact in the partition decree entered by Judge Leary in 1981, he summarized his intent for the division of the Sawmill property:

*Acres:* 5139 more or less
*Division:* Each 1284.75 acres more or less. Equal in quantity and quality. Division into parcels will not decrease value of the whole. Can be partitioned without great prejudice to owners.
*Present Use:* Grazing
*Highest and Best Use:* Grazing and recreational
*Improvements:* Fencing, stock ponds, corrals
*Stock Trails:* Across Wright property to get to grazing land, Thirty Five Canyon. See access.
*Water:* Developed spring in Sections 21, 23, 26; spring in Sawmill Canyon Section 33.
*Access:* On existing road from I–15 frontage road across Wright property in mouth of Sawmill Canyon.

Termination of the easement at the Forks would not conform with Judge Leary's summary. The Forks are located on Shirley's property. The division into parcels "equal in quantity and quality" which will "not decrease value of the whole" simply cannot be accomplished without giving Edward and Charles access to the eastern portions of their properties across Shirley's property beyond the Forks. If the legal descriptions of the easements control, the value of Edward's and Charles' properties is greatly decreased; they would effectively be denied access to nearly 80 percent and 98 percent of their lands, respectively.

The existence of the mistake alleged by Edward and Charles is bolstered by the testimony in the instant case of Richard Huffman, who Florence and Charles hired in the original partition action to prepare descriptions of the easements. Huffman testified that in doing so, he made two assumptions which turned out to be false. Huffman believed that livestock could be moved onto the Sawmill property through the south end of Thirtyfive Canyon. This was refuted when Judge Murphy (trial judge in the instant action) personally traversed that canyon and found that it was not accessible for livestock from the south. Judge Murphy then attempted to find an alternative access. He found that livestock could be moved single file in limited numbers from the Sawmill Canyon road up through Pine Canyon but that moving the stock back down Pine Canyon was even more "limited, difficult and treacherous." In addition, Huffman believed that there was a livestock right-of-way from the highway to the mouth of Thirtyfive Canyon,

across the Wrights' property. This assumption also proved to be false. There is no access to the bottom of Thirtyfive Canyon over the Wrights' property. Huffman did not testify in the partition action on the issue of access, and his recommendations regarding the easements were not at issue. Instead, they were accepted by stipulation. During the trial of the partition action, Charles Gillmor's counsel addressed Judge Leary:

> And the proposed stipulation is that if Mr. Huffman were called to testify, that he would testify that he prepared those descriptions using existing roads whenever possible; that they are the best descriptions he can make without an on-the-ground survey; and we would submit that they could be modified by survey and by further order of the court should they prove unreasonable.

■ Shirley counters that Judge Leary cautioned Edward to carefully review Huffman's legal descriptions. She contends that in order to reform the descriptions, Edward and Charles must be free from laches and they are not. We have held:

> In addition to the concerns that final judgments should not be lightly disturbed and that unjust judgments should not be allowed to stand, other factors the court should consider are ... whether the movant had a fair opportunity to make his objection at trial, and whether the motion was made within a reasonable time after entry of judgment.

*Laub v. South Central Utah Tel. Ass'n,* 657 P.2d at 1306 (citing 7 James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 60.19 (2d ed.1982)). See also *Maertz v. Maertz,* 827 P.2d 259 (Utah Ct.App.1992), where our court of appeals recently held that a reasonable time under rule 60(b) "depends upon the facts of each case, considering such factors as the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Id.* at 261 (citing *Ashford v. Stewart,* 657 F.2d 1053, 1055 (9th Cir.1981)).

We have previously held that a mistake of fact or false assumption may be grounds for relief under rule 60(b)(7) or pursuant to an independent action in equity regardless of the length of time that has passed:

> [M]istake of fact may be grounds under an action in equity to grant relief as provided under Rule 60(b)(7). It states "any other reason justifying relief from the operation of a judgment." Further, the Supreme Court of this state has ruled erroneous assumptions may be grounds for entering a new order.

*Egan v. Egan,* 560 P.2d 704, 705–06 (Utah 1977) (footnote omitted); *see Stewart v. Sullivan,* 29 Utah 2d 156, 158, 506 P.2d 74, 76 (1973) ("The provisions of Rule 60(b)(7) are sufficiently broad to permit the court to set aside its former order which appeared to have been entered upon an erroneous assumption and to enter a new order based upon the record before it."); *Ney v. Harrison,* 5 Utah 2d 217, 219, 299 P.2d 1114, 1116 (1956) (plaintiff entitled to relief from judgment under rule 60(b)(7) on mistaken belief that her husband was responsible for debt owed by her under terms of divorce decree).

Shirley contends that *St. Pierre v. Edmonds,* 645 P.2d 615, 618 (Utah 1982), limits our earlier case law. She argues that an independent action in equity is justified only when particularly egregious behavior has resulted in an unconscionable judgment or order. Shirley misreads that case. Following her interpretation would in effect undermine the impetus of rule 60(b). *St. Pierre* involved allegations of fraud upon the court based on claims that the plaintiff had assented to a settlement agreement as a result of harassment, threats, abuse, and intimidation by her ex-husband. The case did not state that an independent action will only lie for such claims or that such an action is no longer viable to remedy errors based on mutual mistakes of fact in legal descriptions. Moreover, we cited 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2868, at 239–40 (1973), which specifically states that an independent action in equity "also will lie on the basis of accident or of mistake." In *Moore's Federal Practice,* we find the same premise: "Relief from a judgment by an independent action on the basis of acci-

dent or mistake is less common than relief on the basis of fraud, but, nevertheless, both accident and mistake afford the basis for relief in an appropriate situation." 7 James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 60.37[1], at 60–381 (2d ed. 1992) (footnotes omitted). In support of the above proposition, Professor Moore cites to a Fifth Circuit opinion:

> The independent suit in equity, as a remedy for relief from mistake, however, has been shrouded with the same lore and mystery as the ancillary writs. Fortunately, in 1935 the Supreme Court decided the case of *State of Wisconsin v. State of Michigan*, 295 U.S. 455, 55 S.Ct. 786, 79 L.Ed. 1541 [1935], wherein a former judgment based on mutual mistake of the parties was corrected in a subsequent independent proceeding. There, as here, the parties consented to a decree dividing certain land between them. It developed that through mutual mistake of the parties the decree agreed upon and signed by the court was in error in that the dividing line therein contained was not the dividing line actually intended by the parties. The Supreme Court, without discussing the principles involved and simply citing the case of *Thompson v. Maxwell*, 95 U.S. 391, 397, 399, 24 L.Ed. 481 [1877], decided that the court had jurisdiction to correct the decree.

*West Virginia Oil & Gas Co. v. George E. Breece Lumber*, 213 F.2d 702, 706 (5th Cir.1954).

■ We hold that the delay on the part of Edward and Charles is excusable. There has been no prejudice to Shirley. The partition decree is a lengthy document with numerous legal descriptions. The parties themselves contemplated possible revision of the descriptions as evidenced by the stipulation entered into at the partition trial that the legal descriptions could be modified should they prove to be unreasonable. In fact, the parties have previously corrected other mistakes they found in the legal descriptions. The evidence overwhelmingly supports the fact that a mutual mistake occurred in the drafting of the decree: False assumptions were made by Huffman in preparing the descriptions; the findings of fact recite that the property should be divided in like quantity and quality with no undue prejudice to any party; after the partition decree was entered, Edward used the full length of Sawmill Canyon Road for years. The trial court's finding that "the trial court in the partition action did not intend to provide Edward Gillmor and Charles Gillmor access over parcels awarded to Florence Gillmor" is correct, but that intent was founded on misinformation as to other available access. The statements in our opinion in *Gillmor v. Gillmor*, 657 P.2d at 740, that historical uses of the property may be foreclosed by the partition and that Edward's livestock operation may have to be substantially altered were not made in the context of issues of access and easements. Indeed, access was not raised as an issue on appeal. Instead, our statements only related to dividing large acreage into three smaller tracts, which we observed would require "far reaching adjustments" by Edward in his ranching operation. We are free to correct any misinterpretation of one of our opinions. *Cf. State v. Rimmasch*, 775 P.2d 388, 410 n. 2 (Utah 1989) (Durham, J., concurring).

■ It has long been the law in this state that conclusions of law must be predicated upon and find support in the findings of fact and that the judgment or decree must follow the conclusions of law. When there is variance, the judgment must be corrected to conform with the findings of fact. *Mason v. Mason*, 108 Utah 428, 160 P.2d 730 (1945); *Parrott Bros. v. Ogden City*, 50 Utah 512, 167 P. 807 (1917). When the lack of conformity is discovered after the time for appeal has expired, relief may be sought under rule 60(b). The trial court abused its discretion in failing to grant that relief in view of the evidence that Judge Leary did not intend to deprive Edward and Charles of access to a major part of their properties.

We are mindful of the concern which the trial judge expressed over opening up a decree after eight years, in view of the years of litigation among members of the Gillmor family. However, we think that

concern is outweighed by the need to correct an error which prevents two owners from full use of the properties awarded to them. We trust that correcting the error will bring about the peace which the trial judge sought. Therefore, remand is necessary on this issue, with instructions to correct the easement description under rule 60(b) to allow Edward and Charles access to the eastern portions of their properties.

## II. HUNTING PERMITS

In 1982, Stephen Gillmor, as lessee of the property of Florence Gillmor and Charles Gillmor, began to sell permits to hunt on that property.[5] Defendant Dennis Wright informed Stephen Gillmor that hunters would not be allowed to cross his property to access the leased property. Therefore, in the fall of 1986, Gillmor filed this action against the Wrights to enjoin their interference with the use of Sawmill Canyon Road as an access for hunters. Gillmor sought a temporary restraining order on the theory that he enjoyed a prescriptive easement or an irrevocable license to cross the Wright property. The trial court denied that order because Gillmor had an adequate remedy in damages.

Shortly after the TRO hearing, Gillmor discovered a 1943 trial court decision entitled *Olsen v. Papadopulos*. Olsen was the predecessor in interest of the Wrights. Papadopulos was the lessee of a portion of the Gillmor Sawmill property. Olsen claimed that Papadopulos had no right to use Sawmill Canyon Road, as it crossed Olsen's property. The trial court ruled that the road was a public road and therefore enjoined Olsen from interfering with the use of the road by Papadopulos or any other person. Gillmor informed Dennis Wright of the *Papadopulos* decision, and Wright temporarily ceased his resistance to the use of the road. Subsequently, in December of 1986, Wright persuaded the Summit County Commission to abandon Sawmill Canyon Road as a public road. Thereupon, the Wrights resumed their resistance to the use of the road by hunters, and Gillmor again sought a preliminary injunction. The trial court (Judge Wilkinson) held that Gillmor could use the road for any purpose that was legal prior to the abandonment of the road in 1986. Because hunting violated a Summit County zoning ordinance, use for that purpose was disallowed.

The matter was ultimately tried to yet another trial judge (Judge Murphy), who issued a written opinion disagreeing with Judge Wilkinson's ruling but stating that he felt constrained by it in deference to the law of the case doctrine. Judge Murphy found that the Gillmor family had for many years prior to 1986 used Sawmill Canyon Road to obtain access "for big game hunting by the family, employees and guests, but not including access for persons holding permits from the landowners to hunt big game." Moreover, he found minimal evidence of road damage by the hunters and no real difference in the nature of the use of the road itself, whether the use of the parcels was for commercial hunting, grazing, or both. Judge Murphy further found "some minimal evidence that hunters were bothersome at times to ranchers, cattle, and sheep but that there was no sufficient showing that the hunters' use of the road interfered with the abutting owners' use of or access to their land." Finally, Judge Murphy found that Shirley had lost $10,943 as a direct result of the Wrights' interference with the hunters' use of the road. However, no damages were awarded because hunting violated a Summit County zoning ordinance.

Shirley Gillmor owns property abutting Sawmill Canyon Road. Under our law, a landowner whose property abuts a public road possesses, by operation of law, a private easement of access to that property across the public road. *See, e.g., Mason v. State*, 656 P.2d 465, 468 (Utah 1982); *Bailey Serv. & Supply Corp. v. State Rd. Comm'n*, 533 P.2d 882, 883 (Utah 1975). A subsequent abandonment of a public right-

5. Florence Gillmor later conveyed her Sawmill Canyon property to Stephen and Shirley Gillmor.

of-way over such a road has no effect on a private easement owned by an abutting landowner. *See Mason,* 656 P.2d at 468–69; *Hague v. Juab County Mill & Elevator Co.,* 37 Utah 290, 296, 107 P. 249, 252 (1910); *see also* Utah Code Ann. § 27–12–102.5.

In *Mason,* we stated: "Except where changed by statutes pertaining to limited access highways, ... an abutting landowner has a private easement of ingress and egress to existing public highways. This private easement of access has been held to survive the abandonment or vacation of the public highway." 656 P.2d at 468 (citations omitted). Shirley Gillmor is in a similar situation, and we therefore hold that she has a private easement of access over the road which survived Summit County's abandonment of the public right-of-way over the road.

Judge Murphy wrote:

It is clear that Judge Wilkinson's interpretation and application of *Hague v. Juab County Mill and Elevator Co.,* 107 P. 249 (Utah 1910) and *Mason v. State,* 656 P.2d 465 (Utah 1982) differs with the views heretofore expressed in this Summary Decision. Judge Wilkinson's views also suggest that the purposes for which access is sought determine whether access is to be allowed. This Summary Decision, however, indicates that a destination purpose does not taint one's use of an easement or right of way as long as that use is not a different or greater burden on the servient estate. The law of the case doctrine, however, dictates that Judge Wilkinson's interpretations and application prevail.

We agree with Judge Murphy that the correct inquiry is not the legality of the activity conducted on the property reached by the easement or right-of-way, but rather whether a greater burden is imposed on the servient estate.[6] Remand is necessary on this issue to determine whether the use of the road by hunters with permits places a different or greater burden on the servient

estate. If the trial court finds no different or greater burden, Gillmor is entitled to a permanent injunction enjoining any interference by the Wrights.

One final issue needs to be addressed. The trial court found that Shirley had lost $10,940 in profits from hunters who had purchased permits to hunt but were not allowed access to her property. However, because the trial court determined that hunting violated a Summit County ordinance, no damages were awarded. This conclusion of law is correct. No legal damages flow from the inability to engage in an unlawful activity. "Loss of profits may not be considered as an element of damages where the business from which they would have resulted was, or would have been, conducted in violation of law." 25 C.J.S. *Damages,* § 42, at 742 (1966) (citing *Gibbs v. United Mine Workers of America,* 343 F.2d 609, 618 (6th Cir.1965), *rev'd on other grounds,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Jurgens v. Davenport Ry.,* 249 Iowa 711, 88 N.W.2d 797 (1958); *Shelley v. Hart,* 112 Cal.App. 231, 242–43, 297 P. 82, 87 (1931)).

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

HALL, C.J., and ZIMMERMAN, J., concur.

GREGORY K. ORME, Court of Appeals Judge (concurring).

I concur in the court's opinion. I write separately only to address the law of the case doctrine, which I believe was viewed with undue reverence by Judge Murphy, probably because the prior determination had been made by a fellow judge who previously had the Summit County assignment. Because this issue recurs with some frequency in counties served by rotating judges, I think we should clarify the matter even though the parties, in the press of debating the merits of the judgment ulti-

---

**6.** We express no opinion on whether the law of the case doctrine required Judge Murphy to defer to Judge Wilkinson's earlier ruling. That issue has not been raised on appeal by any party.

mately entered, have not paused to address this link in the decisional chain.

While this court in footnote six of the main opinion expresses no opinion on Judge Murphy's view that the law of the case doctrine "dictate[d]" that he give effect to Judge Wilkinson's incorrect conclusions, it seems clear to me that this view leads to an unwarranted delay in delivering justice and burdens the appellate courts with issues that are capable of expeditious resolution at the trial level.

The law of the case doctrine is not a limit on judicial power, but only a practice designed "to protect both court and parties against the burdens of repeated reargument by indefatigable diehards." 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4478, at 789–90 (1981) [hereinafter *Federal Practice* ]. "The doctrine is not an inexorable command that rigidly binds a court to its former decisions but rather is an expression of good sense and wise judicial practice." *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir.1978), *overruled on other grounds*, *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544 (5th Cir.1983) (en banc); *see Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 44–45 n. 5 (Utah Ct.App.1988). Among situations where reconsideration of a previously decided issue is recognized as desirable, notwithstanding the law of the case, is when there is a "need to correct a clear error or prevent manifest injustice." *Federal Practice*, § 4478, at 790. As one appellate court . observed, with all delicacy aside: "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await rever-

sal." *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co.*, 632 F.2d 680, 683 (7th Cir.1980).

Simply put, the law of the case doctrine does not prohibit a judge from catching a mistake and fixing it. *See James Constructors*, 761 P.2d at 45 ("[T]rial court is not inexorably bound by its own precedents...."); *McKee v. Williams*, 741 P.2d 978, 981 (Utah Ct.App.1987) (court can change a ruling until a final decision is formally rendered; hence judge did not abuse discretion by rescinding prior decision to deny partial summary judgment). If this had been Judge Murphy's case on his Salt Lake County individual calendar, and he had entered some interim order like Judge Wilkinson did, and he became convinced at trial that he was wrong, he would not have hesitated to fix it, relying on his fuller knowledge of the matter, more complete briefing, or other circumstances exposing the error. The happenstance that Summit County is still on a master calendar, served by constantly rotating judges, should not change that prerogative of the judge who actually decides the case on its merits.[1] Nor do I think the statute prohibiting one trial judge from "reversing" another, *see* Utah Code Ann. § 78–7–19(1),[2] applies to this situation—it is just intended to prevent a party from repeatedly peddling the same motion, hoping to eventually find a favorable judicial response. Thus, the statute would properly preclude Judge Murphy from entertaining the very TRO application rejected by Judge Wilkinson, but it does not preclude him in a subsequent stage of the case from taking a legal view different from that which Judge Wilkinson espoused in denying the TRO. In a sense, the two judges, while different per-

---

**1.** While the general rule in Utah is that one judge of the same court cannot properly redetermine a previous ruling made by another judge in the same case, *see State v. Lamper*, 779 P.2d 1125, 1129 (Utah 1989), circumstances occasionally arise when a judge may properly overturn a peer judge's ruling in the same case. *See, e.g., Richardson v. Grand Central Corp.*, 572 P.2d 395, 397 (Utah 1977) (another judge from same court can consider same question of law if presented in a different light); *In re Estate of Mecham*, 537 P.2d 312, 314 (Utah 1975) (second judge vacated first judge's order striking excep-

tions to an accounting when matter subsequently appeared on law and motion calendar).

**2.** Section 78–7–19(1) provides:

If an application for an order, made to a judge of a court in which the action or proceeding is pending, is refused in whole or in part or is granted conditionally, a subsequent application for the same order may not be made to any other judge, except of a higher court.

sons, constitute a single judicial office for law of the case purposes, namely, the third district judge serving Summit County.

In situations like the one before us, a judge who recognizes a mistake by the judge previously concerned with the same case and yet fails to correct that mistake simply delays the inevitable correction at the appellate level. In my view, if Judge Murphy could have deviated from his own prior interim decision—and he clearly could have done so here—he could have deviated from Judge Wilkinson's. And he could have done so with certainty that this court would not reverse a second judge's sound correction of a prior error on the basis that the correction was not in accordance with the law of the case established by the first judge. *See Federal Practice*, § 4478, at 795.

STEWART, J., concurs in the concurring opinion of GREGORY K. ORME, Court of Appeals Judge.

DURHAM, J., having disqualified herself, does not participate herein.

GREGORY K. ORME, Court of Appeals Judge, sat.