Dennis S. ARTHUR and Donna L. Arthur, his wife, Plaintiffs and Respondents,

v.

Nick CHOURNOS and Dorothy K. Chournos, his wife, Individually and as general partners in the Chournos Land & Livestock Company, a limited partnership, Samuel N. Chournos, a general partner in the Chournos Land & Livestock Company, a limited partnership, and the Chournos Land & Livestock Company, a limited partnership, Defendants and Appellants.

No. 15031.

Supreme Court of Utah.

Jan. 19, 1978.

Milton A. Oman, Salt Lake City, for defendants and appellants.

John S. Boyden, Sr., of Boyden, Kennedy, Romney & Howard, Salt Lake City, for plaintiffs and respondents.

HALL, Justice:

Defendants, hereinafter referred to as "Chournos," appeal from an order partitioning 5,238 acres of range land located in Box Elder County upon the Promontory Peninsula which is bounded on three sides by the waters of the Great Salt Lake. The land is owned by Chournos and plaintiffs, hereinafter referred to as "Arthur," in equal, undivided interests and has been utilized for the grazing of livestock in the months of winter and spring. Both parties own other land in the same area in their own right. Arthur leases his interests to tenants while Chournos utilizes all of his interests in conducting a sheep operation.

The parties designated one person each to act as referees and they were appointed by the court, however, they could not agree upon a recommendation. This prompted the court to appoint a third referee. The three referees then submitted a majority recommendation of partition which provided for "acceptance" by the parties or, in the alternative, a sale. The minority recommendation provided for the same partition but did not require acceptance by the parties. Thereafter, the court conducted a trial on the issues presented as to the respective merits of partition and sale at the close of which the order of partition appealed from was made. Chournos asserts the court erred in ordering partition since it results in great prejudice that may only be alleviated by an order of sale.

■ Partition is provided for by statute [1] and, when a party properly invokes the aid of the statute, partition is afforded as a matter of right [2] unless it appears to the satisfaction of the court that partition cannot be made without great prejudice to the owners. In the event such a showing is made, the court may order a sale of the real property.[3]

■ The burden of demonstrating the "great prejudice" contemplated by the statute must be borne by the party urging sale.[4] The record reveals that Chournos recognized and accepted that burden and presented evidence in support of his position which focused primarily upon his contention that the lands should be sold as a unit which would continue to support a continued livestock operation. However, he also proposed an alternate method of partition designed to effect a similar continued use. Arthur in turn presented contrary evidence in support of partition as recommended by the referees and it was on those disputed facts that the court ruled, stating his reasons therefor.

The judge's comments in the record clearly reveal that he gave due consideration to all of the facts presented to him. He made specific reference to the contents of the reports of the referees, the evidence presented at trial and the arguments of counsel. He further noted the anticipated effects of the order of partition on land values, access, tract sizes, future use, adjacent lands owned by the parties, improvements and water sources, all of which caused him to conclude that partition would not cause "great prejudice" to the owners. He also considered the alternate plan of partition proposed by Chournos but determined it not to be fair and equitable.

■ The court is not bound to accept the report of the referees. In fact, by statute,[5] it may confirm, change, modify or set aside the report, and, if necessary, appoint new referees. Thus it can be seen that it was not a prerogative of the referees to condition partition upon its acceptance by the parties. To hold otherwise would be to permit infringement of the judicial process.

1. U.C.A., 1953, 78–39–1 et seq.

2. *Barrett v. Vickers*, 12 Utah 2d 73, 362 P.2d 586 (1961).

3. U.C.A., 1953, 78–39–12.

4. *Barrett v. Vickers*, supra, note 2.

5. U.C.A., 1953, 78–39–15.

Traditional rules of appellate review require us to yield to the judgment of the trial court where its decision is substantially supported by the evidence.[6] In the case of *Barrett v. Vickers*[7] where a very similar factual situation arose pertaining to partition this Court stated the law as follows:

The answer to the appellants' attack on the findings and judgment is found in the traditional rules of review: that due to the trial court's prerogatives and advantaged position the presumptions favor his findings and judgment; that where there is dispute and disagreement in the evidence we assume that he believed those aspects of it and drew the inferences fairly to be derived therefrom which give them support; and if upon our survey of the evidence in that light, there is a reasonable basis to sustain them they will not be disturbed.

■ The trial court duly considered the relative harm that invariably arises by virtue of any partition or sale and determined that partition was the least onerous burden for the owners to bear. The method of partition adopted by the judge was, in his judgment, the most equitable way of dividing the property and it is amply supported by the evidence. He dealt with the problem of access by giving Chournos an easement conditioned upon his giving Arthur a like needed easement, thereby allowing access by both. He also noted that there was some evidence of the existence of prescriptive rights which might even resolve the matter without an exchange of easements.

■ This appeal, being one in equity, permits us to review questions of both law and fact.[8] This does not mean that we should substitute our judgment for that of the trial court merely because we may feel another result would be more appropriate.[9]

To modify, or make new findings, the record must compel it.[10]

Chournos has not met the burden of showing that the trial court abused its discretion in not ordering sale and the judgment is affirmed. Costs awarded to Arthur.

MAUGHAN and WILKINS, J., concur.

ELLETT, Chief Justice: (dissenting).

This is an appeal by Chournos from an order of partition of 5,238 acres of dry, desert, mountainous land which is owned in joint tenancy by the parties to this lawsuit. Each party owns other land in the same area. The Arthurs lease their land to a tenant who runs cattle and sheep upon it. Chournos has a large sheep operation and utilizes the jointly-owned land along with his own in that business.

The parties could not agree on the use of the jointly-owned land and Arthur began this suit for partition. The parties each appointed a referee to advise the court on the method of the partition and the share to be allotted to each. The court may affirm, change, modify, or set aside the report of the referees; and if necessary, appoint new referees.[1]

In this case the two referees could not agree so the court appointed a third referee and they filed two reports with the court: a majority report and a minority report. The court accepted the majority report and Chournos appeals asking this Court to order a sale of the jointly-held property or to remand for a new trial.

Our statute[2] provides for a sale and distribution of the funds in cases where great prejudice to the owners would result from partition.

6. *Stone v. Stone*, 19 Utah 2d 378, 431 P.2d 802 (1967); *In Re Crandall's Estate*, 9 Utah 2d 161, 340 P.2d 760 (1959); *Stanley v. Stanley*, 97 Utah 520, 94 P.2d 465 (1939).

7. 24 Utah 2d 334, 471 P.2d 157 (1970).

8. Constitution of Utah, Art. VIII, Sec. 9.

9. *Barrett v. Vickers,* supra, note 7; *Stone v. Stone,* supra, note 6.

10. *First Security Bank of Utah v. Demiris*, 10 Utah 2d 405, 354 P.2d 97 (1960).

1. U.C.A., 1953, 78–39–15.

2. U.C.A., 1953, 78–39–12.

Two of the referees testified in court. The third could not attend because he had suffered a heart attack. The testimony of the two who did attend court was of interest. The referee appointed by respondent testified as follows:

Trying to be fair in dividing this as close to fifty-fifty as we could with all of the factors involved. We couldn't solve it all because of the lay of the land. There's no way that those lands colored in green [jointly held] can be divided to solve all of the problems of all the parties. <u>But it certainly sets a base from which further negotiations could be made.</u> [Emphasis added.]

\*    \*    \*    \*    \*    \*

Q. Now I'll ask you if this division as proposed here would open the way further exchanges and assist in those exchanges in the future.

A. I would certainly think so. Reasonable neighbors should be able to negotiate after each knows exactly what the other—what he and the other party owns.

The referee appointed by the court said:

As I mentioned, since we had recognized that there could be considerable detrimental impacts, and since we were not in a position as a committee to determine the severity of these impacts, we had intended to let the plaintiff and the defendant make that judgment themselves. We were aware at the time we wrote this document [the report to the court] that it was not within our charge to make the decision as to whether or not the land could be divided. We have done the best we could as far as attempting to make a division that is equitable, but we had hoped and our intent was with this paragraph to provided the opportunity for the plaintiff and the defendant to make the judgment as to whether or not the severity of the division was such that they could not accept our division.

Q. Did you consider or determine then that the possibility existed there that detrimental effect, substantial detriment, would result or could result from the partition?

A. We did think it was possible. We did think it might be possible, and as I mentioned we did not think we were in a position to make that judgment as to severity to either party.

\*    \*    \*    \*    \*    \*

Q. Did you insert the rest of the paragraph—I assume you did?

A. Yes, sir, we did.

Q. And for what reason?

A. This was, as I tried to say before, to provide the opportunity for the two principals in the case to make their own judgment as to whether or not our purposed division was fair and equitable to each of them.

Q. And if they made a determination that it was not fair, what was your intention from your report?

A. Our intent, as stated in the report, if such a determination was made by the principals or either of the two principals, then our intent was to simply recommend—we realized we have no authority here, but to simply recommend to the court that the property be sold.

The division of the land was as fair as possible under the circumstances, but the situation was fraught with problems. The referee appointed by the court further testified:

Q. Any other factors that weighed upon you in considering what detrimental impact this partition would have?

A. Well, there was one final one. I do have occasion to work in real estate. There's a principle in real estate which simply states that usually the value of a grazing tract as a unit is somewhat greater than the value of that same unit divided into portions, which would then have to be grazed individually. This probably was one of the main reasons why we inserted the acceptance clause.

Q. Do I understand you correctly then it was your intent from the language you used in the report you made to leave to the parties a determination as to whether or not the damage to them was substantial?

A. Yes, sir, that was our intent, as a recommendation to the court.

A reading of the record shows that the appraisers were cognizant of the prejudice that would result to the owners if a partition was made. Apparently they thought that the parties would begin trading lands with each other if partition was made. Of course, the possibility that great prejudice occasioned by partition could be alleviated through trading by and between the parties is not a concern of either the referees or of the court. The parties were unable to agree on the joint use of their commonly-owned land and they ought not be forced, by economic distress created by partition, to agree where they never did agree before this lawsuit.

The partition as made by the court gave sections of land to the parties which only cornered on each other—like giving Utah and New Mexico to one party and Colorado and Arizona to the other party. No travel could be made from one section to the other without a trespass being made on the land of the other. Besides, there was a serious problem about a right-of-way into some of the assigned tracts.

In the judgment entered by the court, an easement 500 feet wide was given to Chournos across some of the land awarded to Arthur, but on the condition that Chournos give Arthur a like right-of-way over other land owned by Chournos.

The court should partition the jointly-owned land, if possible, and not torture the order by attempting to force a grant of a right-of-way over other land owned by a party in order to lessen the obvious great prejudice that otherwise would result from the division.

In equity cases such as this, we have the right to consider the evidence and to make our own findings and decisions when we are convinced that the trial court did not rule properly under the evidence given in the case.[3]

There are five springs located on the jointly-owned land, and in attempting to give two springs to one party and three to the other, the land was so divided that the partition cannot be sustained. We, therefore, should reverse the judgment as rendered and remand the case to the trial court with directions to order a sale of the property pursuant to law and to divide the funds equally after making allowance for any improvements by either party to which that party would be entitled as contribution from the other in case no sale was made.

Costs should be awarded to appellants.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of ELLETT, C. J.

---

3. *In re Demiris*, 10 Utah 2d 405, 354 P.2d 97 (1960).