**Edward Leslie GILLMOR and Siv Gillmor, his wife, Plaintiffs and Appellants,**

**v.**

**Florence GILLMOR, Charles F. Gillmor and Melba G. Gillmor, his wife, Defendants and Respondents.**

No. 17588.

Supreme Court of Utah.

Dec. 3, 1982.

E.J. Skeen, Clifford L. Ashton, Salt Lake City, for plaintiffs and appellants.

James B. Lee, James M. Elegante, Kathlene W. Lowe, H. James Clegg, Harold G. Christensen, Salt Lake City, for defendants and respondents.

STEWART, Justice:

This is a suit for partition of approximately 33,000 acres of land situated in Salt Lake, Summit, Wasatch and Tooele Counties. Although there is no judicial determination of its actual market value, the evidence indicates that the value is something in excess of $35 million. Included in the partition are appurtenant water rights, land leases, access roads and trails, and Bureau of Land Management grazing permits. The major dispute is whether the property should be partitioned in kind according to the cotenants' pro rata share of the value of the land so as to permit plaintiffs to continue operation of their cattle ranch in a similar manner to which they have heretofore operated it (plaintiffs' plan), or whether the acreage should be partitioned in kind with each cotenant receiving his pro rata share of the acreage (defendants' plan). The trial court chose the latter, and plaintiffs appeal.

As far as is pertinent to the present dispute, the subject property was originally acquired in joint ownership by two brothers, Frank and Edward Lincoln Gillmor, fathers of the present parties. The brothers operated a livestock business known as Gillmor Brothers. Upon the death of Frank Gillmor in 1954, his one-half interest in the property passed by devise in equal shares to his sons Charles F. Gillmor (defendant) and Edward Leslie Gillmor (plaintiff). Charles F. and Edward Leslie jointly carried on the Gillmor Livestock Company either in conjunction with, or leasing from, Edward Lincoln Gillmor until 1968 when Charles F. retired. Plaintiff Edward Leslie Gillmor then continued to operate the livestock company by leasing the three-quarters interest owned by Charles F. and Edward Lincoln Gillmor. Upon the death of Edward Lincoln Gillmor in 1970, his one-half interest in the properties passed to his daughter, the defendant Florence Gillmor. Plaintiff Edward Leslie Gillmor thereafter operated the livestock business by leasing the one-quarter interest of his brother Charles F. and the one-half interest of his cousin Florence. Those leases have since expired and have not been renewed. The parties currently own the disputed property as tenants in common, with Edward Leslie and Charles F. each holding a one-quarter interest and Florence holding a one-half interest.

In 1974, after several months of unsuccessful negotiations to divide the property among the cotenants, plaintiffs Edward Leslie Gillmor and his wife filed this suit to partition the property, or in the alternative, to have it sold at auction and apportion the proceeds. The trial court referred the matter to three referees who inspected the property and made a written recommendation to the court. However, all parties objected to the recommendation and the trial court rejected it. Thereafter, the parties submitted proposed plans for partitioning the property.

Defendants proposed that the entire property be divided into fifteen distinct blocks, with each block to be sufficiently uniform in nature so that it could be divided into four parcels of equal size and quality. The parcels in each block were to be distributed to the parties according to their respective interests.

Plaintiffs proposed that the land be divided according to the highest and best use into three groups: (1) livestock ranching property; (2) industrial property; and (3) recreational property. Under this proposal the plaintiffs would receive the livestock ranching property comprising approximately 64% of the total acreage, but only 25% of the total value of the land, thereby enabling them to continue the operation of the livestock business. The industrial and recreational properties, having a much higher value on an average per acre basis, were to be allocated to the defendants to divide between them. Following a hearing on the two proposals for partition, the trial court decided in favor of defendants' plan.

In the spring of 1977, the trial court heard testimony concerning the quality and quantity of the land in each block, but excluded testimony on property values and other evidence supporting plaintiffs' proposed partition. The trial court found that all but one of the fifteen blocks of land was dissimilar from the others in material respects, yet sufficiently homogeneous that, considering both the quantity and the quality of the land, each of the parties would receive a fair share of each block. The one exceptional block, the so-called ranch property, was ordered sold. The court reserved the partition of appurtenant property rights and amenities for a future hearing and determination.

On an interlocutory appeal, plaintiffs challenged the decision of the trial court. They claimed that the plan for partition effectively abolished their ranching operation and that the land should have been partitioned into larger, more useable blocks according to value and highest and best use. In an unpublished opinion dated March 23, 1979, this Court set aside the trial court's decision and remanded with instructions that the trial court take evidence on the appurtenant property rights and allow plaintiffs to present evidence on the equities of abolishing their cattle business, with due consideration to be given to property values and the plaintiffs' theory of partition.

On remand, the trial court took evidence on the value of the land and other matters as directed by this Court. The trial court again adopted essentially the same plan for partition as it had earlier, except that 16 blocks were designated for division into four parts. In the findings of fact and conclusions of law, the trial court stated it had

considered, among other evidence, testimony regarding historical use of the property by the Gillmor family, its present use, its quantity, its description, the quality, forage, and carrying capacity based upon animal units, water, water rights, stock in irrigation companies, livestock trails, crops, improvements, access, easements and cross-easements, impact of flood plain and zoning, regulations, highest and best use, market value, market value based on forage and carrying capacity, leases, BLM permits, transfer of BLM permits, commensurate land, the number and kind of livestock operated by plaintiffs (or a corporation they control), the value of that livestock, the economics of plaintiffs' operation of the livestock business, the equities involved in abolishing plaintiffs' livestock business, and the equities of all the parties.

The court also found that the land requested by plaintiffs constituted 63.8 percent of the total acreage. Although that land had an approximate value of only 26 percent or less of the total value of the properties (depending on which appraisal is used), the trial court held it inequitable to award plaintiff, owner of only a one-fourth interest in the whole, 63.8 percent of the land. Rather, the court found the equities to favor partitioning each separate block so that each owner would receive a portion thereof, and thereby share equally in future value

fluctuations as the properties were put to higher and better uses.

The trial court divided the property into seventeen blocks, found that all but one could be equitably divided into four parcels of equal quantity and quality without prejudice to the owners, and that the division of the land into such parcels would not decrease the value of the whole. The one exception was the Old Ranch property, which the court ordered sold by the sheriff pursuant to Rule 69(e), Utah R.Civ.P., at a minimum price of $912,900.00. With regard to plaintiffs' claim that it was inequitable to in effect abolish their livestock business, which they claimed would result from the partition being based on quantity rather than value, the court found that all the parties wanted some of the ranching property; that plaintiffs would suffer no serious economic loss, considering that their annual rate of return through their livestock business was only .028 to .035 percent; that even if plaintiffs received all the property they requested, they would still have to lease more in order to carry on the current year-round operation; and that under the partition order, plaintiffs could still operate a livestock business through leasing, as had been done for years anyway. The court also apportioned the appurtenant property rights.

Plaintiffs have now appealed again, arguing that the trial court (1) disregarded this Court's instructions on remand; (2) erred in partitioning the ranch land into small unuseable pieces; (3) erred in ordering the sale of the Old Ranch; and (4) committed prejudicial error by excluding some of plaintiffs' evidence on property values.

## I. SCOPE OF REVIEW

■ The outcome of this appeal is determined in large measure by our standard of review in equity cases. On legal issues we do not defer to the trial court's ruling; our function is to determine that proper standards were applied and we do not defer to the trial court on such issues. *Provo City Corp. v. Nielson Scott Co.,* Utah, 603 P.2d 803, 805 (1979); *Automotive Manufacturers Warehouse, Inc. v. Service Auto Parts, Inc.,* Utah, 596 P.2d 1033, 1036 (1979). On issues of fact, however, we do defer to the trial court. In a partition case, this Court will not "substitute our judgment for that of the trial court merely because we may feel another result would be more appropriate." *Arthur v. Chournos,* Utah, 574 P.2d 723, 725 (1978). A reversal on questions of fact is appropriate only if the evidence clearly preponderates against the findings of the trial court, *e.g., Jensen v. Brown,* Utah, 639 P.2d 150 (1981). In another partition case, *Barrett v. Vickers,* 24 Utah 2d 334, 471 P.2d 157 (1970), we explained the reason for our deferential stance on review:

> The answer to the appellants' attack on the findings and judgment is found in the traditional rules of review: that due to the trial court's prerogatives and advantaged position the presumptions favor his findings and judgment; that where there is dispute and disagreement in the evidence we assume that he believed those aspects of it and drew the inferences fairly to be derived therefrom which give them support; and if upon our survey of the evidence in that light, there is a reasonable basis to sustain them they will not be disturbed.

*Id.* at 337, 471 P.2d at 159. *See also McBride v. McBride,* Utah, 581 P.2d 996, 997 (1978); *Del Porto v. Nicolo,* 27 Utah 2d 286, 495 P.2d 811 (1972).

■ Furthermore, on the critical ultimate issue of whether the partition is fair and equitable, we reverse only if appellant shows that the trial court abused its discretion. *Arthur v. Chournos, supra.* Necessarily the trial court must be accorded broad discretion in fashioning an appropriate decree of partition. That rule has particular force in a case such as this where the land to be partitioned is made up of many separate parcels; is located in several counties; is subject to various kinds of uses in addition to ranching, such as development for industrial, recreational, and residential purposes; and has widely disparate values and potentialities for increase in value.

## II. THE PLAN OF PARTITION

■ Plaintiffs contend that the trial court on the remand of this case after the first appeal erred by disregarding the rulings of this Court set forth in our unpublished opinion of March 23, 1979. Plaintiffs contend that three instructions in particular were disregarded: 1) to give due consideration to property values; 2) to consider the equities of abolishing plaintiffs' livestock operation; and 3) to take evidence on and apportion the appurtenant property rights.

The opinion of this Court on the first appeal did not mandate a particular result; it only directed the trial court to take additional evidence and give due consideration to that evidence before reaching a conclusion. At an evidentiary hearing after the remand, the trial court heard extensive evidence covering all three of these matters. The court made findings on the value of the property as a whole, on the value of each block, and on the value per acre within each block. The court then used those findings to determine the approximate value of the lands each party would take under plaintiffs' theory of partition. The court also received evidence on appurtenant property rights and apportioned them in some detail, especially with regard to water rights. Plaintiffs had ample opportunity to present their evidence and further argument that the trial court should partition the land on the basis of value. That the trial court declined to adopt plaintiffs' proposal for partition does not prove that it failed to give due consideration to plaintiffs' evidence. Upon our review of the record, we cannot conclude that the trial court failed to comply with our previous decision relating to property values and appurtenant property rights.

■ Plaintiffs argue particularly strenuously that the trial court failed to give adequate consideration to the equities involved in a partition decree which allegedly has the effect of destroying plaintiffs' livestock business. Plaintiffs argue in effect that because of their long time use of all the ranching properties through leasing from the cotenants, they therefore should be allocated those parcels suitable for ranching in fee simple so as to be able to continue ranching. It is, of course, fundamental in partition cases that an order of partition must be fashioned to cause the lease degree of harm to the cotenants and to confer no unfair advantage on one of the cotenants. *See In re Ferguson's Estate,* 44 Utah 234, 139 P. 438 (1914). Nevertheless, we cannot accede to the view that the prior use by one cotenant overrides all other considerations or even that the prior use should be given greater weight than all other considerations.

Inherent in a suit for partition of this nature is the possibility that historical uses of the property will be foreclosed, and that the division of the land may vary from a particular party's preferences or past uses. The plaintiffs' proposal was entitled to consideration, but it could be adopted only if it would also be fair to the other co-owners. The trial court's findings of fact and conclusions of law support the conclusion that it would not be fair to the defendants to allocate all the ranching properties to the plaintiffs. In view of the rapidly changing land values in the areas where the subject property is located, the trial court found:

It is inequitable to award to plaintiff, as the owner of a one-fourth interest in each parcel of land, 63.8 percent of the land. It is equitable to partition each parcel of land so that each owner is awarded part of each parcel in accordance with his interest therein, and so that each owner will be able to benefit from varying increases in the value of each parcel as their uses shift from present use to higher and better use.

The plaintiff Edward L. Gillmor, who had a 25 percent interest as a cotenant, would under plaintiffs' plan end up with 63.8 percent of all the land. While it is true that the land proposed by plaintiffs to be allotted to them comprises only approximately one-fourth of the total present value, and therefore gives the plan the appearance of fairness, the trial court was concerned with the uncertainty of future value fluctuations and the risk of giving the plaintiffs a poten-

tial windfall at the expense of the defendants. To avoid that risk it is both reasonable and equitable to allocate each co-owner a portion of each major block of property, and thereby ensure that all the co-owners will share in the effects of all property value fluctuations. *In re Ferguson's Estate, supra. Cf. Ryan v. Egan,* 26 Utah 241, 72 P. 933 (1903) (ordering partition in kind of mine where not shown to be prejudicial).

The trial court also gave careful consideration to the equities of terminating plaintiffs' historical use of the land. The court found that all the parties wanted to retain portions of the ranching properties for either direct use or leasing. In addition the court found that plaintiffs would have to lease additional land even if they were allotted all they requested, that leasing is a usual business practice in a ranching operation such as plaintiffs', that plaintiffs' rate of return on their operation was only approximately .03 percent based on the fair market value of the land, and that the average net income for the years 1976, 1977, and 1978 was only $12,497.

These findings indicate that the court's partition is not as harsh as plaintiffs contend. The plaintiffs' low rate of return is cited not to show that plaintiffs were not successful enough to justify continuing the operation, but as evidence that they would not incur significant monetary losses even if they in fact were unable to continue the ranching business. Furthermore, even under plaintiffs' plan, their access to some grazing properties essential to a year-round operation would be cut off, making it necessary to lease still additional land. Therefore, under either plan, the nature of plaintiffs' livestock operation would be substantially altered, although admittedly not as much under plaintiffs' plan. The court also found that plaintiffs' operation had always relied on leases and that they could continue to operate on that same basis following partition. Thus, plaintiffs' livestock business will not necessarily be abolished, although its continuation would clearly require far-reaching adjustments by plaintiffs.

Plaintiffs also contend that the trial court erred in partitioning the grazing land into "small unuseable pieces." Much of what is stated above applies to this argument as well. It is true that partitioning the land into small, noncontiguous parcels is not conducive to a large grazing operation (absent extensive leasing to join the parcels). If preservation of suitable grazing lands had been the primary consideration, the partition as ordered would certainly be inequitable. However, that was merely one factor which the trial court necessarily found was outweighed by the consideration that each cotenant should be able to share equally in the value of the land. In addition to the fact that much of the land is located in areas where the highest and best use of the land may change rapidly, a fair partition based on present value, even if the property were divided into larger blocks, would be extraordinarily difficult, if not impossible, because of the wide disparity of the appraisals which ranged from $35,542,200 to $43,615,150.

Furthermore, while the land as partitioned may be less useable for grazing, the parcels are not so small as to be unuseable. The parties may facilitate grazing operations by leasing from one another, as in the past, or find other nonagricultural uses. Although the evidence conflicts somewhat concerning the effect of the partition on the value of the property as a whole, there is evidence to support the trial court's conclusion that the division into parcels would neither decrease the value of the whole nor prejudice the owners. Furthermore, the trial court attempted to minimize the ill effects of the division into parcels by allotting to each party the parcel of its choice, insofar as possible. *See generally Barrett v. Vickers, supra,* 24 Utah 2d at 337, 471 P.2d at 159.

### III. SALE OF THE "OLD RANCH" PROPERTIES

■ Plaintiffs also contend that the trial court erred in ordering the sale of the Old Ranch property, which had formerly been used as the ranch headquarters. The argu-

ment is related to plaintiffs' central contention that the entire block of ranch lands should have been kept intact and awarded to them. Having already concluded that that central contention must fail, the supporting argument against the sale of the ranch headquarters carries considerably less significance. Therefore, we give plaintiffs' specific objections only brief attention.

U.C.A., 1953, § 78–39–12 provides that if "the property or any part of it is so situated that the partition cannot be made without great prejudice to the owners, the court may order a sale thereof . . . ." Plaintiffs argue there was no proof of "great prejudice" to justify the sale. We disagree. The evidence supports the trial court's finding that "[t]he Old Ranch . . . cannot be equitably partitioned in kind without great prejudice to any of the owners, as those parcels contain substantial buildings and improvements of such diverse nature and lands of such diversity of development and productivity that partition in kind would be inequitable." Under those circumstances, partition in kind would have created great prejudice.

Plaintiffs also challenge the court's order requiring the sale of the "Old Ranch" properties as a single parcel, instead of in separate parcels. The evidence refers to the properties as the "Old Ranch," "Improved" and "Sub-irrigated parcels." The trial court found that these properties constitute a single farming unit and ruled that they need not, therefore, be sold separately pursuant to U.C.A., 1953, § 78–39–31.[1] Although the property might conceivably be divided into distinct parcels, the evidence establishes that the value of the parcels would diminish if sold separately and the ranch houses, corrals, barns, and other physical structures would be rendered virtually useless unless the crop land were sold with it. Therefore, the court's finding that Old Ranch was one farming unit is substantiated by the evidence. *See Sting v. Beckham,* 105 Cal.App.2d 503, 233 P.2d 591 (1951).

Plaintiffs also allege that the order of sale was defective because 1) it ordered the Salt Lake County Sheriff to conduct the sale according to Rule 69(e), Utah R.Civ.P., instead of directing referees to conduct a sale according to the partition statute; and 2) it specified a minimum bid.

We agree that sales of property in partition proceedings should be governed by the partition statute, and not by Rule 69(e). The partition statute contemplates that sales, when necessary, are to be conducted by referees, and not by the sheriff. For example, section 78–39–22 refers to referees as taking the proceeds of the sale; section 78–39–24 refers to referees as making all sales under that chapter; and section 78–39–33 states that the referees must report to the court after completing a sale of property.

As for the court's designation of a minimum bid, it is true that the partition statute does not expressly authorize such action. However, the setting of a minimum price is for the protection of the parties and is within the equitable discretion of the court, as implied by its express power under section 78–39–15 to confirm, modify, or set aside the report of the referees. The referees act as agents for the court in performing the sale. In that light, it was reasonable for the court to set some guidelines for the referees to follow.

We have examined plaintiffs' other objections to the order of sale and consider them to be without merit.

## IV. EXCLUSION OF EVIDENCE

Finally, we address plaintiffs' contention that they were prejudiced by the trial court's exclusion of certain testimony relating to property values. Plaintiffs called as an expert witness on property values a Mr. Werner Kiepe. His testimony was considered important to plaintiffs because his valuations of certain parcels that plaintiffs wanted allocated to them were

---

1. U.C.A., 1953, states:
   In all cases of sales of property the terms must be made known at the time, and if the premises consist of distinct farms or lots, they must be sold separately.

somewhat lower than those of other appraisers and therefore could have been used to show that the value of the land plaintiffs wanted was even less in relationship to the value of all the land, thus making their plan appear more equitable. The court sustained defendants' objection to his testimony, apparently on the grounds that he had been one of the initial referees in the partition suit and prior to that had been a confidential adviser to one of defendants' attorneys. We pass over the potential attorney-client privilege problems that might have arisen had Kiepe testified because we are satisfied that even if the exclusion were erroneous, the decree still could not be reversed. The exclusion of evidence is harmless, "unless ... the excluded evidence would probably have had a substantial influence in bringing about a different verdict or finding." Utah R.Evid. 5. We do not believe Kiepe's testimony would have had that effect. Plaintiffs called three other witnesses who testified on the property values; one more would not have substantially affected the outcome.

### V. CONCLUSION

In sum, the trial court's findings of fact are supported by substantial evidence and there is no basis in law for reversing the decree of partition except for the manner in which the sale of the Old Ranch property is to be conducted. Accordingly, the trial court's judgment and decree of partition is in all respects affirmed, except with respect to the manner of selling the Old Ranch property. We reverse and remand so that the trial court may modify the order of sale to provide for the sale of the Old Ranch property in a manner consistent with this opinion. Costs to respondents.

OAKS, HOWE and DURHAM, JJ., and HOMER F. WILKINSON, District Judge, concur.

HALL, C.J., does not participate herein.